## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PENNY E. KRIESCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-02402 (RMC) |
| | ) | |
| MICHAEL O. JOHANNS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANTS' MOTION TO DISMISS, FOR
## SUMMARY JUDGMENT AND TO TRANSFER

Defendant Michael O. Johanns, Secretary of Agriculture for the U.S. Department of Agriculture ("Defendant"), respectfully moves to dismiss Plaintiff's Complaint and for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(3) & (6) and 56, because Plaintiff fails to state claims entitling her to relief and because Defendant is entitled to judgment as a matter of law. Additionally, Defendant respectfully submits that all remaining claims should be transferred to the District of Maryland, the only jurisdiction in which venue is proper. In support of this motion, Defendant respectfully refers the Court to the attached memorandum of points and authorities.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL
Assistant United States Attorney

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PENNY E. KRIESCH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. 05-02402 (RMC)** |
| | ) |
| **MICHAEL O. JOHANNS,** | ) |
| **SECRETARY OF AGRICULTURE** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
FOR SUMMARY JUDGMENT AND TO TRANSFER**

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully submits this memorandum of points and authorities in support of his motion to dismiss, for summary judgment and transfer. Defendant establishes herein that Plaintiff's older claims stemming from a job assignment in the District of Columbia fail for want of timely initiation of the administrative process and for want of an adverse employment action. What remains are only her claims stemming from a more recent job assignment in Maryland, which claims should be transferred to the District of Maryland, as the only district in which venue is proper or the most convenient district.

## I. **INTRODUCTION**

Plaintiff, an employee of the Department of Agriculture, Animal and Plant Health Service ("APHIS"), brings this employment discrimination action in this district pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), alleging that she was subject to race

discrimination as well as retaliation for filing a prior complaint of harassment and a hostile work environment.

For the reasons set forth below, Plaintiff's lawsuit, particularly concerning her claims involving conduct in the District of Columbia, should be dismissed because Plaintiff failed to initiate the administrative process within the proscribed time period. Further, Plaintiff's claims, if timely, fail for want of an adverse employment action. The remainder of Plaintiff's claims stem from incidents occurring wholly in Maryland. Consequently, this Court should dismiss Plaintiff's lawsuit with respect to the claims occurring in the District of Columbia and transfer the remaining claims to the District of Maryland. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. §§ 1404(a) & 1406(a); 42 U.S.C. § 2000e5(f)(3).

## II. <u>BACKGROUND</u>

Penny Kriesch ("Plaintiff"), an African-American woman, has been employed by the U.S. Department of Agriculture, Animal and Plant Health Service ("APHIS") for sixteen years. Amended Complaint ("A.Compl.") at ¶ 14. From July 1989 to June 2004, Plaintiff served in various GS-13 non-supervisory positions, primarily in the areas of human resources, strategic planning and communications. <u>Id</u>. Beginning in June 2004, Plaintiff assumed her current position of GS-14 Management Analyst. A.Compl. at ¶ 14. Plaintiff's initial allegations of discrimination relate to the period of her employment from 1997 to 1999. A.Compl. at ¶ 16. Plaintiff claims that, during this time, her supervisor, Dr. Charles Schwalbe, engaged in a variety of retaliatory and discriminatory acts against her. A.Compl. at ¶¶ 16-23. Plaintiff alleges that Dr. Schwalbe refused to issue a performance appraisal, thus disqualifying her from receiving cash awards for her work. A.Compl. at ¶ 16. Plaintiff also alleges that Dr. Schwalbe made derogatory and racially hostile comments

about African Americans in her presence. A.Compl. at ¶ 20. Plaintiff does not indicate whether she filed an EEOC complaint based on this allegation.

During this same period of time, nonetheless, Plaintiff alleges that she was subjected to a hostile work environment. A.Compl. at ¶ 24. In December 1997, Plaintiff maintains that she was relocated from her existing office to a neighboring building, which housed the office of her former supervisor, John Good. Eight years before, Plaintiff reportedly had filed and prevailed against Mr. Good on a discrimination complaint. A.Compl. at ¶ 25. Plaintiff alleges that Dr. Schwalbe was aware of her previous Equal Employment Opportunity Commission ("EEOC") complaint against Mr. Good and that her 1997 relocation to an office near Mr. Good was in retaliation for that filing. A.Compl. at ¶32. In support of her hostile work environment allegation, Plaintiff filed an EEOC complaint on May 4, 1999 (**Agency Case No. 990793**). A.Compl. at ¶ 38.

In addition, Plaintiff asserts that she was the victim of retaliation and discrimination on March 16, 1999, when she was not selected for the position of Staff Assistant to the APHIS Administrator ("Chief of Staff"), for which she had applied. A.Compl. at ¶ 42. Plaintiff alleges that a white co-worker was pre-selected for the position and that her application and interview were treated in a perfunctory manner. A.Compl. at ¶¶ 48-49. Plaintiff also alleges that while her co-worker was given a 120-day trial period for the new position, Plaintiff was not afforded the same opportunity. A.Compl. at ¶ 47. Plaintiff cites racially hostile comments and allusions to her prior EEOC complaint as a basis for claiming a discriminatory selection process. A.Compl. at ¶ 54.

Plaintiff filed another EEOC complaint on September 26, 1999 (**Agency No. 000170**). A.Compl. at ¶ 8. It is unclear from Plaintiff's complaint whether her claim concerning her non-

selection to the Chief of Staff position was included in this complaint. Immediately following this filing, Plaintiff alleges several additional discriminatory events.

Plaintiff maintains that she was again the victim of retaliation and discrimination when she was denied a position upgrade on September 29, 1999. A.Compl. at ¶ 55. Following a desk audit, a determination was made that Plaintiff was entitled to an upgrade based on an accretion of duties. A.Compl. at ¶ 55. Plaintiff alleges that her upgrade was subjected to a different classification process and that other employees, specifically white employees who never filed EEOC complaints, were granted upgrades without complication. A.Compl. at ¶ 64. When Plaintiff inquired about her upgrade, she claims that her previous EEOC complaints were cited as the reason that she was not promoted. A.Compl. at ¶ 67. Plaintiff does not state when, if ever, she reported this incident to the EEOC.

On October 12, 1999, Dr. Schwalbe, allegedly, informed Plaintiff that she was being relocated to the APHIS office in Riverdale, Maryland. A.Compl. at ¶ 69. In addition to the relocation, Plaintiff was assigned a new supervisor, Mona Grupp ("Grupp"). A.Compl. at ¶ 73. On November 21, 1999, as Plaintiff describes things, Dr. Schwalbe eliminated Plaintiff's position then reclassified her into another position, based on a position description developed by Ms. Grupp. A.Compl. at ¶ 74. Plaintiff claims that following the reclassification, the majority of her duties were well below her grade level. A.Compl. at ¶ 78. Plaintiff does not state when, if ever, she reported this discrete act of discrimination to the EEOC.

Plaintiff states that Defendant discriminated and retaliated against her at the Riverdale office in March 2000 when management improperly processed her Work Place Violence report. A.Compl. at ¶ 81. On March 20, 2000, Ms. Grupp issued a Notice of Suspension to Plaintiff. A.Compl. at

4

¶ 82.  Plaintiff maintains that Ms. Grupp's demeanor during the delivery of the Notice was such that Plaintiff feared for her safety.  A.Compl. at ¶ 82.  Plaintiff states that although she reported the incident immediately, Defendant did not conduct a proper investigation.  A.Compl. at ¶ 86.  Plaintiff filed an EEOC complaint as to this allegation on August 24, 2000 (**Agency No. 010053**).  Id. at ¶ 8.

Plaintiff's final, most contemporaneous and allegation-filled charge involves an alleged retaliatory non-selection to the GS-14 position of Program Analyst in June or July 2001 at the Riverdale office (**Agency Case No. 020011**).  A.Compl. at ¶¶ 94, 118.  Plaintiff maintains that although she was the best qualified candidate, she was denied the promotion because of her prior EEOC complaints.  A.Compl. at ¶ 96.  According to Plaintiff, Defendant deviated from the hiring standards and practices to ensure that Plaintiff was not hired. A.Compl. at ¶¶ 108-111, 116.

Plaintiff's Complaint lists three counts: (1) adverse personnel actions; (2) subjection to a hostile work environment; and (3) retaliation for protected activities. A.Compl. at ¶¶ 121-123.  Plaintiff seeks a retroactive promotion, compensatory damages up to $300,000, an injunction against the Defendant, and attorney fees.  Compl. at ¶¶ 124.

## III.    PROCEDURAL HISTORY OF THE ADMINISTRATIVE PROCESS

USDA records (case files and reports of investigation) reflect that Plaintiff first contacted the Equal Employment Opportunity Office, which contact generated agency case numbers 990793/1999-01566, on May 4,1999, and agency case numbers 000170/1999-00017 based on a subsequent contact on September 26,1999.[1]  Declaration of Anna Grayson (hereinafter "Grayson

---

[1]  As a result of a decision by USDA to migrate data to a new system, the Equal Employment Opportunity ("EEO") cases (informal and formal) filed by Plaintiff were converted from agency case numbers 990793, 000170, 010053, and 020011 to case numbers 1999-00017, 1999-01566 and 2000-01596. Grayson Dec at ¶ 3.

Dec") at ¶¶ 4, 6. attached as Exhibit 1. The Office of Civil Rights ("OCR") identified agency case numbers 9990793/1999-01566 and 000170/1999-00017 as subsumed by the class complaint in Spencer v. Veneman, Equal Employment Opportunity Commission ("EEOC") Appeal No. 01A05280, Agency No. 990659.[2] Id. at ¶¶ 5, 7; A.Compl. at ¶¶ 29-30.  USDA records further indicate that Plaintiff first made EEO contact as to agency case number 010053/2000-01596 on August 24, 2000. Grayson Dec at ¶ 8.

The USDA records also indicate that on December 4, 2000, OCR accepted and consolidated case numbers 990793/1999-01566 and 000170/1999-00017. Grayson Dec at ¶ 9.  On March 5, 2001, OCR issued a Modified Acceptance Letter, which accepted and consolidated for investigation case numbers 990793/1999-01566, 000170/1999-00017, and 010053/2000-01596. Id. at ¶ 10.  USDA records further reflect that on May 29, 2002, Plaintiff requested a hearing as to case numbers 990793/1999-01566, 000170/1999-00017, and 010053/2000-01596. Id. at ¶ 12.

The Agency's computer database did not reflect a record for agency case number 020011. Grayson Dec at ¶ 11. However, the EEO Counselor's report in the Report of Investigation for agency case number 02001 indicates that Plaintiff had made initial contact with an EEO counselor on July 19, 2001. Id.  After an EEOC Hearing on August 5, 2003, in the case, an EEOC AJ entered an order of judgment on December 10, 2003, finding that Plaintiff had failed to establish unlawful racial or reprisal discrimination based on her non-selection for the position of Program Analyst, GS-13/14, Vacancy Announcement Number 9-77-165-1 in 2001.  Id. at ¶¶ 15-16.  On March 2, 2004, USDA fully adopted the EEOC AJ's decision of no discrimination as the final agency decision on the

---

[2] "The complaint in Spencer was filed on behalf of all African-American employees of USDA and alleged discrimination on the bases of race, color, and reprisal for prior EEO activity in selections, promotions, performance appraisals, awards, and training programs." Grayson Dec at 2, n.1.

complaint. <u>Id</u>. at ¶ 17.  Plaintiff timely appealed (EEOC Appeal No. 01A43314) to the Office of Federal Operations (OFO). <u>Id</u>.  On June 3, 2004, the OFO affirmed the final agency decision in case 020011. <u>Id</u>. at ¶ 18.   Afterwards, Plaintiff timely requested reconsideration (EEOC Request No. 05A51017) of the affirmation in Appeal No. 01A43314. <u>Id</u>.  Plaintiff's request for reconsideration was denied on September 12, 2005.  <u>Id</u>. at ¶ 23; <u>Penny E. Kriesch, Complainant, v. Mike Johanns, Secretary, Department of Agriculture, Agency.</u>, 2005 WL 2254259, EEOC Doc 05A51017, E.E.O.C., September 12, 2005, (No. Rqst 05A51017, App. 01A43314, Agcy 020011, Hrg 120-2003-00221x).

On December 21, 2004, an EEOC AJ dismissed Plaintiff's complaints in agency case numbers 990793/1999-01566, 000170/1999-00017, and 010053/2000-01596 and remanded the cases to the Agency for issuance of a final agency decision consistent with the AJ's decision. Grayson Dec at ¶ 19.  On January 21, 2005, Plaintiff filed an appeal (EEOC Appeal No. 0152321) of the AJ's order of dismissal with the OFO in agency case numbers 990793/1999-01566, 000170 / 1999-00017, and 010053/2000-01596. <u>Id</u>. at ¶ 20.  On March 17, 2005, the USDA OCR sent correspondence to the EEOC reporting that Plaintiff's complaints were subsumed in the <u>Spencer</u> class action, which was still pending certification. <u>Id</u>. at ¶ 21.  Thus, the OCR could not issue a final agency decision at that time. <u>Id</u>.  On August 9, 2005, the EEOC dismissed the <u>Spencer</u> class action. <u>Id</u>. at ¶ 22.  On December 14, 2005, Plaintiff filed the instant action encompassing agency case numbers 990793/1999-01566, 000170/1999-00017, 010053/2000-10596 and 020011. A.Compl. at ¶ 8.

# IV.  ARGUMENT

## A.    Standard of Review

In assessing a motion to dismiss under Rule 12(b)(6), plaintiff's factual allegations must be presumed true and should be liberally construed in his favor.  See Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); Alexander v. FBI, 971 F. Supp. 603, 607 (D.D.C. 1997).  Plaintiff must be given every favorable inference that may be drawn from his allegations of fact.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The amended complaint should be dismissed if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir.1987).  However, "the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by the facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions." Akintomide v. United States, 99-MS-0055 (PLF), 2000 WL 1693739, at *1 (D.D.C. Oct. 31, 2000) (citing National Treasury Employees Union v. United States, 101 F.3d 1423, 1430 (D.C. Cir. 1996); Kowal v. MCI Communication Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Application of this standard in this case requires its dismissal for the reasons described below.[3]

---

[3]  The Court may rely on an attachment to the complaint without converting a motion to dismiss into one for summary judgment. See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996) (ruling that a court may consider a "document integral to or explicitly relied upon in the complaint . . . without converting the motion into one for summary judgment."). Similarly, the Court may properly take judicial notice of matters in prior cases. E.g., Baker v. Henderson, 150 F. Supp.2d 17, 19 n.1 (D.D.C. 2001) ("[i]n determining whether a complaint fails to state a claim, the court may . . . take judicial notice of matters of a general public nature, such as court records, without converting the motion to dismiss into one for summary judgment."); Himmelman v. MCI Communications,104 F.Supp.2d 1, 3 (D.D.C. 2000) ("The court may consider [on a motion to dismiss] the allegations of the complaint, documents attached to or specifically referred to in the complaint, and matters of public record.").

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986); Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. Anderson, 477 U.S. at 247-48; Laningham v. U.S. Navy, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" Celotex Corp., 477 U.S. at 323 (citations omitted).

Mere conclusory allegations are not enough to survive a motion for summary judgment. Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir. 1993); Rowland v. Riley, 5 F. Supp.2d 1, 3 (D.D.C. 1998); Benn v. Unisys Corp., 176 F.R.D. 2 (D.D.C. 1997). Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment. See Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory

allegations of the complaint or answer with conclusory allegations of an affidavit.").  As the Supreme Court has instructed:  "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

A.    **Plaintiff's claims must be dismissed due to failure timely to exhaust administrative remedies.**

Before an employee may pursue a claim against a federal employer under Title VII, he or she must first exhaust the available administrative remedies by proceeding before the agency charged with the discrimination.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.110; See, e.g., Gillet v. King, 931 F. Supp. 9, 12-13 (D.C.C. 1996) (dismissing plaintiff's claim for failure to exhaust administrative remedies).  The first step in the process is for the federal employee to contact an EEOC Counselor at his or her employing agency within 45 calendar days after the date of the alleged discriminatory event.  See 29 C.F.R. § 1614.105(a)(1).  The EEOC Counselor has a short period of time within which informally to resolve the matter or, if the matter is not resolved, to conduct a final interview with the employee.  See 29 C.F.R. § 1614.105(d).  The EEOC Counselor also must inform the employee in writing of his or her right to file a formal discrimination complaint with the agency's EEOC Office.  See id.  The failure to file a timely formal complaint within a 15-day period constitutes a failure to exhaust administrative remedies and is grounds for dismissal of the case by the agency.  See Wilkins v. Daley, 49 F. Supp. 2d 1, 2 (D.D.C. 1999) (citing Saltz v. Lehman, 672 F.2d 207, 208-09 (D.C. Cir. 1982)); 29 C.F.R. § 1614.604(c).

Only after the employee files a formal administrative complaint and is not satisfied with the agency's resolution of that complaint, may he or she either appeal to the EEOC or file a civil action in federal court.  See Johnson v. Peterson, 996 F.2d 397, 399 (D.C. Cir. 1993).  Again, there is a specified time period within which the employee must take these steps.  See 29 C.F.R. § 1614.110. Otherwise, the employee will not have timely exhausted his or her administrative remedies.  See Koch v. Donaldson, 260 F.Supp.2d 86, 90 (D.D.C. 2003).  Therefore, timely exhaustion of administrative remedies is a prerequisite to filing suit in federal court pursuant to Title VII.  See 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.110 (following the final decision of an agency, an employee may either appeal to the EEOC, or file a civil action in federal district court); Brown, 425 U.S. at 832; Zografov, 779 F.2d at 968-69.

The reason for limiting claims to present violations (i.e., those for which a timely complaint was filed or for which a discriminatory scheme is alleged) is to "protect employers from the burden of defending claims arising from employment decisions that are long past."  Delaware State College v. Ricks, 449 U.S. 250 (1980); Caldwell v. ServiceMaster Corp., 966 F. Supp. 33, 49 (D.D.C. 1997). In the instant case, although Plaintiff has filed multiple informal and formal complaints with the EEOC (A.Compl. at ¶ 8), she fails to show that her complaints were timely with respect to all of the claims alleged. A.Compl. at ¶¶ 121-123.  By failing minimally to pursue timely, informal counseling the Plaintiff deprived herself of her right to seek a remedy for her claims.  See National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002) (Title VII claimant must timely pursue administrative remedies after an action of discrimination or retaliation "or lose the ability to recover for it.").

### 1.      Count I must be dismissed

Count I of Plaintiff's complaint, a list of four (4) alleged adverse employment actions taken by the Defendant, must be dismissed because Plaintiff failed to seek counseling or file a timely complaint following each incident. A.Compl. at ¶¶ 121(a)-(d). First, Plaintiff claims that she was discriminated against between 1997 and 1999 when she was not given a performance evaluation that may have resulted in a cash award. A.Compl. at ¶ 121(a). However, Plaintiff did not initiate the administrative process until May 4, 1999. See Grayson Dec at ¶ 4; A.Compl. at ¶ 36. Second, Plaintiff alleges discrimination because she was not selected for a 120-day detail to a position for which she had applied and ultimately was not selected. Plaintiff claims that she learned of the other candidate's selection on March 16, 1999. A.Compl. at ¶ 42. Of course, May 4, 1999, is more than 45 days beyond the March 16 date.

Third, Plaintiff alleges discrimination on September 29, 1999, when she was not promoted following a desk audit of her duties. A.Compl. at ¶ 121(c). Although Plaintiff filed an EEOC complaint three days before this event, she did not seek counseling or file a complaint within 45 days after the incident. See Grayson at ¶ 5. Finally, Plaintiff alleges a change and reduction in her duties as an act of discrimination occurring between October 11 and November 21, 1999. A.Compl. at ¶ 121(d). Plaintiff did not seek counseling or file an EEOC complaint within 45 days of this alleged incident. See Grayson at ¶¶ 4-6. Because Plaintiff failed to file an EEOC complaint for any of the allegations encompassed in Count I, Count I must be dismissed for failure to exhaust administrative remedies.

2.    **Count II must be dismissed**

a.    Plaintiff's Hostile Work Environment Claim is Untimely

Count II of Plaintiff's complaint, encompassing two (2) allegations of what Plaintiff mischaracterizes as a "hostile work environment" allegedly created by the Defendant, must be dismissed because Plaintiff failed timely to file a complaint concerning this allegation.[4]  A.Compl. at ¶¶ 122(a)-(b).  First, Plaintiff alleges that Defendant created a hostile work environment when her supervisor moved Plaintiff's office near to the office of John Good, a co-worker who, as Plaintiff alleges, previously had assaulted her.  A.Compl. at ¶ 122(a).  Plaintiff became aware of the proximity of her new location to Mr. Good's office in February 1998 when she began working in her new office.  A.Compl. at ¶¶ 31-32.  However, the earliest that Plaintiff could be deemed to have filed an EEOC complaint regarding the claim is May 4, 1999, well after the 45-day filing period had passed.  See A.Compl. at ¶ 36, Grayson at ¶ 4.  Secondly, Plaintiff alleges that Defendant created a hostile work environment when her March 20, 2000 Workplace Violence Report was improperly processed.  A.Compl. at ¶ 122(b).  The complaint as dated was clearly untimely.  Grayson at ¶ 6.  Plaintiff has failed to exhaust her administrative remedies for the allegations in Count II, and it too should be dismissed.

As stated by the Court in <u>Keeley v. Small</u>, 391 F.Supp.2d 30 (D.D.C. 2005),

Generally, a Title VII plaintiff must exhaust [her] administrative remedies prior to filing an action in federal court.  <u>See Morgan</u>, [536 U.S. at 122].  This requirement also applies to federal employees, who must contact an EEO counselor within 45 days of the alleged personnel action.  <u>See</u> 29 C.F.R. § 1614.105.  Prior to <u>Morgan</u>,

---

[4]  Although termed "hostile work environment" claims by Plaintiff, the two allegations are more aptly described as discrete events for purposes of administrative exhaustion.  To the extent that they may be deemed hostile work environment claims, they fail substantively. <u>See</u> section 2.b, <u>supra</u>.

many courts held that a plaintiff did not have to exhaust retaliation claims that arose after the filing of an initial administrative complaint. [Citations omitted.] . . .

**However, in the years since <u>Morgan</u> that reasoning has been undermined. <u>Morgan</u> itself rejected the "continuing violation" theory that would permit plaintiffs to recover for discrete acts of discrimination and retaliation that were not exhausted but were "sufficiently related" to exhausted claims.** [536 U.S. at 105]. **The decision also emphasized "strict adherence" to the procedural requirements of Title VII.** [<u>Id</u>. at 108]. **Although the facts of <u>Morgan</u> dealt with discrete incidents of discrimination and retaliation occurring prior to any administrative exhaustion of claims, it has been understood to bar unexhausted claims arising after the filing of an administrative action.** <u>Martinez v. Potter</u>, 347 F.3d 1208, 1210-11 (10th Cir.2003); <u>Romero-Ostolaza v. Ridge</u>, 370 F.Supp.2d 139, 149 (D.D.C.2005). Moreover, since <u>Morgan</u> many of the cases relied upon in this Court's earlier decision have been called into question. In <u>Bowie v. Ashcroft</u>, 283 F.Supp.2d 25, 34 (D.D.C.2003), for example, the court found the reasoning of <u>Bonds v. Heyman</u>, 950 F.Supp. 1202, 1208 (D.D.C.1997) (relied upon in the Sept. 26, 2003 Opinion), inapposite in light of <u>Morgan</u>. <u>See also</u> <u>Romero-Ostolaza</u>, 370 F.Supp.2d at 148 (noting that the analysis of [<u>Nealon v. Stone</u>, 958 F.2d 584, 590 (4th Cir.1992)], and <u>Malhotra v. Cotter & Co.</u>, 885 F.2d 1305, 1312 (7th Cir.1989), both cited in the Court's earlier decision, is irrelevant after <u>Morgan</u> ).

Thus, given <u>Morgan</u>'s strict adherence to procedural requirements including exhaustion, and the subsequent development of the law that casts doubt on the reliability of cases on which this Court previously relied, the Court concludes that its earlier opinion is no longer sound. **In order for plaintiff to pursue [her] claims in federal court, [she] must establish that [she] timely exhausted [her] administrative remedies for each discrete claim of retaliation**. . . .. Therefore, because plaintiff failed to exhaust those claims, [she] may not pursue them here for the first time.

<u>Keeley</u>, 391 F.Supp.2d at 40-41 (emphasis added; a footnote and some citations omitted); <u>see also</u>,

<u>Black v. Tomlinson</u>, 425 F.Supp.2d 101, 108 n.6 (D.D.C. 2006) (Reaffirming <u>Morgan's</u> strict

requirement precluding recovery for discrete acts of discrimination or retaliation not raised in an

EEOC charge within the deadlines set forth in 42 U.S.C. § 2000e-5(e)).

14

b.    Plaintiff's Hostile Work Environment Claims Fail Substantively

Morgan explained that each "incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'"  536 U.S. at 114.  Hostile environment claims, on the other hand, are "different in kind from discrete acts." Id. at 115.  "Their very nature involves repeated conduct."  Id.  Morgan recognized two types of disparate treatment claims: claims of discrete acts, which are assessed and analyzed separately and individually, and claims of "repeated conduct," in the form of hostile environment claims.  Hostile environment claims are the claims which may be "based on the cumulative effect of individual acts." Id. at 115.  Morgan did not create or recognize some hybrid form of claim: repeated instances of discrimination which do not rise to the level of a hostile environment, but which, cumulatively, in the aggregate, constitute a material adverse employment action.  Indeed, such a theory is simply inconsistent with Morgan's rejection of the "continuing violations doctrine" or a "serial violations" claim.  Id. at 114.

Here, Plaintiff, through her amended complaint, seeks to aggregate a list of historical claimed wrongs as part of a hostile work environment claim.  However, no such invention is recognized. Claimed wrongs can be aggregated only if the plaintiff is deemed to have pled a valid hostile work environment claim, which Plaintiff here has failed to do either at the administrative or district court level.  Assuming arguendo that she is deemed to have pled such a claim, Plaintiff's claims of discriminatory treatment should be measured against the more stringent hostile work environment standard.  Measured against that standard, Plaintiff's claims clearly fail.[5]

_____

[5]  Even assuming **arguendo** that a theory of continuing or cumulative or aggregated material adverse employment action, as distinct from a claim of hostile environment, were legally cognizable, Plaintiff cannot make out any such claim, here, and summary judgment should be entered in Defendant's favor.  The several, disparate incidents complained of by Plaintiff do not, in the aggregate, combine to establish a material adverse employment action.

Plaintiff does not complain of the proverbial "death by a thousand cuts," but of annoyance by several, slight alleged nicks, all of which are relatively ordinary incidents of the day-to-day supervisor-subordinate relationship. Plaintiff complains about being deprived of performance evaluations, a discretionary bonus and a detail, and about being subjected to a "hostile" office relocation. In addition to the fact that all of these are more in the nature of discrete acts for which administrative claims should be filed, given their timing, they also were not sufficiently severe or pervasive to alter the conditions of Plaintiff's employment or to create an abusive working environment.

A hostile work environment claim may only be maintained "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).[6] Title VII is not a "'general civility code.'" Davis v. Ashcroft, 355 F.Supp.2d 330, 346 (D.D.C. 2005) (quoting Faragher v. City of Boca Raton, 524 U.S. 775 (1998). Further, courts are reminded to be mindful that "'[e]veryone can be characterized by sex, race, ethnicity or . . . disability; and many bosses are harsh, unjust, and rude.'" Bryant v. Brownlee, 265 F.Supp.2d 52, 63 (D.D.C. 2003) (quoting Alfano v. Costello, 294 F.3d 365, 377 (2nd Cir. 2002)).

Thus, the demanding test serves to "'filter out complaints attacking the ordinary tribulations of the workplace.'" Davis, 355 F.Supp.2d at 346 (quoting Faragher, 524 U.S. at 788). Whether Plaintiff can establish a hostile work environment is determined under "'all the circumstances'

---

[6] Race-based hostile environment claims are reviewed under the same standard as sexual harassment claims. Morgan, 536 U.S. at 116, n. 10.

including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Morgan, 536 U.S. at 116 (quoting Harris, 510 U.S. at 23). Plaintiff's relatively minor claims just do not satisfy this demanding standard.

**B.      Plaintiff Did Not Suffer an Adverse Employment Action as to Certain Claims, Which Accordingly Should Be Dismissed.**

   **1.      Performance evaluation and discretionary cash award**

      Plaintiff's claim that she did not receive a performance evaluation which *may* have resulted in a cash award did not amount to an adverse employment action.    To establish a prima facie case of discrimination under § 2000e-2(a), the plaintiff must establish that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) the unfavorable action gives rise to an inference of discrimination, as when the applicant is passed over for a position that she is qualified for in favor of another applicant who is not a member of a protected class. Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006) (citing Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999). Plaintiff can establish that, as an African American or an employee who has engaged in protected activity, she is a member of a protected class.  However, Plaintiff has failed to satisfy the second element of the prima facie case standard, that is, that she has suffered an adverse employment action. See Stella v. Mineta, 284 F.3d 135, 144-45 (D.C. Cir. 2002).  This court has held that even poor performance evaluations cannot be considered adverse employment actions unless they affect an employee's grade or salary or result in the loss of a non-discretionary bonus. See Brown v. Brody, 199 F.3d 446, 458 (D.C. Cir. 1999); Russell v. Principi, 257 F.3d 815, 818-19 (D.C. Cir. 2001).

Although Plaintiff did not receive a performance evaluation from 1997 to 1999 she does not allege any affect on her grade level or salary; Plaintiff's only loss was a potential for a *discretionary* cash award. See Declaration of Karen Benham ("Benham Dec") at ¶ 8, attached hereto as Exhibit 2. APHIS employees, such as Plaintiff, are not guaranteed recognition or awards. Benham Dec at ¶ 8. Recognition programs vary depending on needs and budgets, and, accordingly, programs are given "considerable latitude in developing award systems." See Benham Dec at ¶ 7. Because performance awards are completely discretionary at APHIS, Plaintiff's claim is not an actionable adverse employment action and should be dismissed. To the extent that Plaintiff relies on the loss of a discretionary bonus or cash award in support of her claim, such a loss is typically not sufficient to constitute an adverse employment action, particularly when the bonus or cash award was not guaranteed. See Rabinovitz v. Pena, 89 F.3d 482, 488-89 (7th Cir.1996) (loss of bonus not adverse employment action when employee not automatically entitled to bonus). This Court has held that, in the related context of a discretionary bonus, its loss is not an adverse employment action if the plaintiff had only a subjective expectation that she would receive a bonus. See Ball v. Tanoue, 133 F.Supp.2d 84, 91 n.6 (D.D.C. 2001), citing Russ v. Van Scoyoc Associates, Inc., 122 F.Supp.2d 29, 33 (D.D.C. 2000).

### 2.    120-day detail to Chief of Staff position

Plaintiff was not subject to an adverse employment action when she was not selected for an 120-day detail to the Chief of Staff position. The D.C. Circuit specifically has held that the denial of an "acting" designation cannot be considered an adverse employment action because "this type of temporary designation is not one of the terms, conditions, or privileges of employment contemplated be Title VII." Stewart v. Evans, 275 F.3d 1126, 1135 (D.C. Cir. 2002). Thus the

18

denial of a 120-day detail to the Chief of Staff position is not an actionable adverse employment action and the claim must be dismissed.

**C.** **Venue Is Improper in This District Under Title VII's Venue Provision**.

Plaintiff's alleges three (3) claims for relief based on incidents occurring at the Riverdale, Maryland office: (1) a reduction of job duties (A.Compl. at ¶ 121(d)); (2) improper processing of a Workplace Violence report (A.Compl. at ¶ 122(b)); and (3) non-selection for a promotion (A.Compl. at ¶ 123). Under settled law, venue must be determined solely by reference to Title VII's venue provisions. Stebbins v. State Farm Mut. Auto. Ins. Co., 413 F.2d 1100, 1101 (D.C. Cir.), cert. denied, 396 U.S. 895 (1969); Donnell v. National Guard Bureau, 568 F.Supp. 93, 94 (D.D.C. 1983); Hayes v. RCA Serv. Co., 546 F.Supp. 661, 663 (D.D.C. 1982). Title VII's venue provision is contained in Title 42 U.S.C. § 2000e-5(f)(3). Section 2000e-5(f)(3) provides four options for venue.[7] Under any of the four options, venue is improper in the District of Columbia.

The first venue option under Title VII is "any judicial district in the State in which the unlawful employment practice is alleged to have been committed." 42 U.S.C. § 2000e5(f)(3). Title

---

[1] Section 2000e-5(f)(3) provides:

Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this sub-chapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

VII venue determinations are based on a "commonsense appraisal" of events having operative significance.  Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978); Donnell v. Nat'l Guard Bureau, 568 F.Supp. 93, 94 (D.D.C. 1983).  Specifically, venue cannot lie in the District of Columbia when "a substantial part, if not all, of the employment practices challenged in this action" took place outside the district even when actions taken in the district "may have had an impact on the plaintiff's situation."  Donnell, 568 F. Supp. at 94 (citing Stebbins, supra, 413 F.2d at 1102-03; accord, Darby, 231 F.Supp.2d at 277.  See also, Spencer v. Rumsfeld, 209 F.Supp.2d 15, 18-19 (D.D.C. 2002).  Here, as the Complaint itself establishes, all of the remaining actionable claims occurred in Riverdale, Maryland, not in the District of Columbia.

The second venue option offered by Title VII is "the judicial district in which the employment records relevant to such practice are maintained and administered."  42 U.S.C. § 2000e5(f)(3).  Plaintiff makes no allegations in the Complaint that even suggest that her personnel files are not administered or maintained in the District of Columbia.  Accordingly, the location of pertinent personnel files dictates that venue is improper in the District of Columbia.  See Washington v. General Elec. Corp., 686 F.Supp. 361 (D.D.C. 1988).

The third venue option offered by Title VII is "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment process."  42 U.S.C. § 2000e5(f)(3).  Here, the remaining, viable claims advanced by Plaintiff do not involve a change in the locus of her work assignment.  The only location involved in her allegations is Riverdale, Maryland, and no other location is implicated.  Accordingly, under Title VII's third venue option, venue is improper in the District of Columbia.

The fourth venue option offered by Title VII is a residual provision.  <u>Only</u> if the Defendant cannot be found in any district in which venue would be proper under Title VII's first three venue provisions may venue properly lie in "the judicial district in which the respondent has his principal office."  42 U.S.C. § 2000e5(f)(3).  This last venue option is available <u>only</u> if the respondent is not found in any of the judicial districts resulting from the first three venue options.  <u>See</u> <u>Donnell</u>, 568 F. Supp. at 95; <u>Turbeville v. Casey</u>, 525 F. Supp. 1070, 1072 (D.D.C. 1981).  In this case, venue can be established based on the first three venue options.  Accordingly, the residual venue provision may not be applied in this case.  <u>See</u> <u>Stebbins</u>, 413 F.2d at 1102; <u>Donnell</u>, 568 F. Supp. at 95; <u>Turbeville</u>, 525 F.Supp. at 1072.  As a matter of law, therefore, Title VII's fourth venue option is irrelevant. Accordingly, the Court should dismiss plaintiff's claims, enter judgment for defendant and should transfer this action to the District of Maryland, Southern Division.

When an action is filed in an improper venue, the procedural remedy to be applied is found in the provisions of 28 U.S.C. § 1406(a), which permits the Court to dismiss or transfer the case.[8] The decision whether to transfer or dismiss is entrusted to the Court's discretion.  <u>See</u> <u>Stewart Organization, Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988); <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 253 & 257 (1981); <u>Naartex Consulting Corp. v. Watt</u>, 722 F.2d 779, 789 (D.C. Cir. 1983); <u>Cellutech, Inc. v. Centennial Cellular Corp.</u>, 871 F. Supp. 46, 50 (D.D.C. 1994); <u>Hayes</u>, 546 F. Supp. at 665

---

[2] In relevant part, 28 U.S.C. § 1406(a) provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

("Under [28 U.S.C. § 1406(a)], the decision as to whether a dismissal or transfer is appropriate is one committed to the discretion of the Court acting in the interests of justice."). The district court has the same discretion to dismiss, rather than transfer, Title VII cases. See General Elec., 686 F. Supp. at 362; Sconion v. Thomas, 603 F.Supp. 66, 67-68 (D.D.C. 1984); Hayes, 546 F.Supp. at 665.

**D.    Claims Arising From Incidents in the Riverdale Office Should Be Transferred to the District of Maryland Under 28 U.S.C. § 1404(a)**

Even if the Court somehow finds that venue for Plaintiff's Riverdale claims is proper in the District of Columbia, these claims nevertheless should be transferred to the District of Maryland for the convenience of the parties and witnesses and in the interest of justice. See Darby v. United States Department of Energy, 231 F. Supp.2d 274 (D.D.C. 2002). Under § 1404(a), an employment discrimination action may be transferred from the district in which it is brought, even though that may be a district in which venue could lie pursuant to 42 U.S.C. § 2000e-5(f)(3), for the convenience of the parties and witnesses and in the interests of justice. See also Casarez v. Burlington Northern/Santa Fe Co., 193 F.3d 334, 339 (5th Cir. 1999) (affirming transfer of employment discrimination action, pursuant to § 1404(a) for the convenience of the parties and witnesses and in the interests of justice, to district where, inter alia, majority of fact witnesses lived and personnel files were kept).

Pursuant to 28 U.S.C. § 1404(a), a case that is properly filed in a particular jurisdiction may be transferred to another, more convenient, jurisdiction in the following circumstances:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a) (2001).  The decision to transfer a case to another district is discretionary and

involves a "factually analytical, case-by-case determination of convenience and fairness."  SEC v.

Savoy Industries, 587 F.2d 1149, 1154 (D.C. Cir. 1978), cert. denied, 440 U.S. 913 (1979).

Consistent with this standard, federal courts have articulated three requirements with respect to such

a transfer:  (1) that a judicial district exists in which the case might have been properly brought, (2)

that the convenience of the parties and witnesses would be better served in an alternative judicial

district, and (3) that the interests of justice would be better served in an alternative judicial district.

SEC v. Page Airways, Inc., 464 F. Supp. 461, 463 (D.D.C. 1978).  All three requirements are met

in the present action.

First, these claims could, and should have been brought in the District of Maryland, where

these alleged discriminatory employment actions occurred.  See 42 § 2000e-5(f)(3).  Second, as these

events occurred in Maryland, all of the witnesses and most of the relevant records are maintained

in Maryland.  Therefore, the convenience of Defendant and that of the witnesses clearly would be

better served if these claims were adjudicated in Maryland.  This Court consistently has transferred

actions to alternative judicial districts when the majority of the witnesses live in or near the

transferee forum.  See, e.g., Armco Steel Co., L.P. v. CSX Corp., 790 F. Supp. 311 (D.D.C. 1991);

Securities & Exchange Comm'n v. Ernst & Young, 775 F. Supp. 411 (D.D.C. 1991).

For the same reasons, Plaintiff cannot claim any greater convenience in pursuing these claims

in the District of Columbia, as Plaintiff is a resident of Maryland.  See Stewart v. Capitol Area

Permanente Medical Group, 720 F. Supp. 3, 5 (D.D.C. 1989) (plaintiff's choice of forum is entitled

to less weight when that forum is outside plaintiff's home jurisdiction).  The claims in question arose

in the District of Maryland, and the relief Plaintiff seeks will be imposed (if at all) in Maryland,

where Plaintiff is still employed at the Riverdale office.  See <u>Franklin v. Southern Railway, Co.</u>, 523 F. Supp. 521, 523 (D.D.C. 1981) (where action has little contact with chosen forum, plaintiff's selection is less important).

Finally, the interests of justice would be better served if the case were to be adjudicated in the District of Maryland.  The convenience achieved by the transfer also would mean greater judicial economy for the Maryland based claims, and the District Court for the District of Maryland certainly would be better situated to address Plaintiff's claims for equitable relief.  Given all these factors, the case should be transferred to the District Court for the District of Maryland.

## V.   CONCLUSION

Based upon the foregoing, Defendant respectfully requests that the Court dismiss all counts occurring the in the District of Columbia and transfer all remaining counts to the District Court for the District of Maryland.

Respectfully submitted,


_____/s/_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
OLIVER W. McDANIEL, D.C. Bar #377360
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 616-0739

September 6, 2006

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENNY E. KRIESCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 05-02402 (RMC) |
| | ) |
| MICHAEL O. JOHANNS, | ) |
| | ) |
| Defendants. | ) |

## STATEMENT OF MATERIAL FACTS
### NOT IN GENUINE DISPUTE

The Defendant, through counsel, the United States Attorney for the District of Columbia, respectfully submits the following statement of material facts not in genuine dispute in support of his motion for summary judgment.

1.    Plaintiff is an African-American woman, who has been employed by the U.S. Department of Agriculture, Animal and Plant Health Service ("APHIS") for sixteen years. Amended Complaint ("A.Compl.") at ¶ 14. Beginning in June 2004, Plaintiff assumed her current position of GS-14 Management Analyst, after serving in various GS-13 non-supervisory positions. Id. at ¶ 14.

2.    Plaintiff's initial allegations of discrimination relate to a period of her employment from 1997 to 1999. A.Compl. at ¶ 16.

3.    Plaintiff claims that, during this time, her supervisor, Dr. Charles Schwalbe, engaged in a variety of retaliatory and discriminatory acts against her. A.Compl. at ¶¶ 16-23. Plaintiff alleges that Dr. Schwalbe refused to issue a performance appraisal, thus disqualifying her from receiving cash awards for her work. A.Compl. at ¶ 16. Plaintiff also alleges that Dr. Schwalbe made derogatory and racially hostile comments about African Americans in her presence. A.Compl. at ¶ 20. The Complaint does not indicate whether Plaintiff filed an EEOC complaint based on this allegation.

4.      During this same period of time, Plaintiff alleges that she was subjected to a hostile work environment, based on Dr. Schwalbe knowingly relocating her office closer to the office of her former supervisor, against who she had prevailed in a discrimination action filed by her eight years earlier, in order to retaliate against her.  A.Compl. at ¶¶ 24, 25, 32.  Plaintiff filed an EEOC complaint relating to this hostile work environment allegation on May 4, 1999 (**Agency Case No. 990793**).  A.Compl. at ¶¶ 8, 38.

5.      In addition, Plaintiff asserts that she was the victim of retaliation and discrimination on March 16, 1999, when she was not selected for the position of Staff Assistant to the APHIS Administrator ("Chief of Staff"), for which she had applied.  A.Compl. at ¶ 42, 47-49, 54.

6.      Plaintiff next filed an EEOC complaint on September 26, 1999 (**Agency No. 000170**).  A.Compl. at ¶ 8.

7.      Plaintiff contends that she was again the victim of retaliation and discrimination when she was denied a position upgrade, following a desk audit, on September 29, 1999.  A.Compl. at ¶ 55.  Following a desk audit, a determination was made that Plaintiff was entitled to an upgrade based on an accretion of duties, but Plaintiff was allegedly subjected to a different process than white employees who had not filed EEO complaints.  A.Compl. at ¶¶ 55, 64, 67.  The Complaint does not contain information suggesting that Plaintiff filed an administrative complaint concerning this claim.

8.      On October 12, 1999, Plaintiff's supervisor, Dr. Schwalbe, relocated her to the APHIS office in Riverdale, Maryland.  A.Compl. at ¶ 69.  In addition to the relocation, Plaintiff was assigned a new supervisor, Mona Grupp ("Grupp").  Id. at ¶ 73.

9.      On November 21, 1999, Dr. Schwalbe eliminated Plaintiff's position then reclassified her into another position, based on a position description developed by Ms. Grupp.  A.Compl. at ¶ 74.

2

Following the reclassification, the majority of Plaintiff's duties were allegedly well below her grade level. A.Compl. at ¶ 78. The Complaint does not indicate that Plaintiff reported this discrete act of discrimination to the EEOC.

10.    Plaintiff alleges states that Defendant discriminated and retaliated against her at the Riverdale office when, on March 20, 2000, Ms. Grupp issued a Notice of Suspension to Plaintiff in an intimidating manner and management thereafter failed to conduct a proper investigation of the incident. A.Compl. at ¶ 81-82, 86. Plaintiff filed an EEOC complaint as to this allegation on August 24, 2000 (**Agency No. 010053**). Id. at ¶ 8.

11.    Plaintiff has as well advanced a claim of retaliatory non-selection to the GS-14 position of Program Analyst in June or July 2001 at the Riverdale office (**Agency Case No. 020011**). A.Compl. at ¶¶ 94, 96, 108-111, 116, 118.

12.    Plaintiff's Complaint lists three counts: (1) adverse personnel actions; (2) subjection to a hostile work environment; and (3) retaliation for protected activities. A.Compl. at ¶¶ 121-123. Plaintiff seeks a retroactive promotion, compensatory damages up to $300,000, an injunction against the Defendant, and attorney fees. Compl. at ¶¶ 124.

13.    As a result of a decision by USDA to migrate data to a new system, the Equal Employment Opportunity ("EEO") cases (informal and formal) filed by Plaintiff were converted from agency case numbers 990793, 000170, 010053, and 020011 to case numbers 1999-00017, 1999-01566 and 2000-01596. Grayson Dec at ¶ 3.

14.    USDA records (case files and reports of investigation) reflect that Plaintiff first contacted the Equal Employment Opportunity Office, which contact generated agency case numbers

990793/1999-01566, on May 4,1999, and agency case numbers 000170/1999-00017 based on a subsequent contact on September 26,1999. Grayson Dec at ¶¶ 4, 6.

15.    The Office of Civil Rights ("OCR") identified agency case numbers 9990793/1999-01566 and 000170/1999-00017 as subsumed by the class complaint in <u>Spencer v. Veneman</u>, Equal Employment Opportunity Commission ("EEOC") Appeal No. 01A05280, Agency No. 990659. <u>Id</u>. at ¶¶ 5, 7; A.Compl. at ¶¶ 29-30.    "The complaint in <u>Spencer</u> was filed on behalf of all African-American employees of USDA and alleged discrimination on the bases of race, color, and reprisal for prior EEO activity in selections, promotions, performance appraisals, awards, and training programs." <u>Id</u>. at 2, n.1.

16.    USDA records indicate that Plaintiff first made EEO contact as to agency case number 010053/2000-01596 on August 24, 2000. Grayson Dec at ¶ 8.  On March 5, 2001, OCR issued a Modified Acceptance Letter, which accepted and consolidated for investigation case numbers 990793/1999-01566, 000170/1999-00017, and 010053/2000-01596. <u>Id</u>. at ¶ 10.

17.    On December 21, 2004, an EEOC AJ dismissed Plaintiff's complaints in agency case numbers 990793/1999-01566, 000170/1999-00017, and 010053/2000-01596 and remanded the cases to the Agency for issuance of a final agency decision consistent with the AJ's decision. Grayson Dec at ¶ 19.

18.    On January 21, 2005, Plaintiff filed an appeal (EEOC Appeal No. 0152321) of the AJ's order of dismissal with the OFO in agency case numbers 990793/1999-01566,000170 / 1999-00017, and 010053/2000-01596. <u>Id</u>. at ¶ 20.

19.    On March 17, 2005, the USDA OCR sent correspondence to the EEOC reporting that Plaintiff's complaints were subsumed in the <u>Spencer</u> Class, which was still pending certification,

precluding the OCR from issueing a final agency decision at that time. Id. at ¶ 21.  On August 9,

2005, the EEOC dismissed the Spencer class action. Id. at ¶ 22.

20.     On December 14, 2005, Plaintiff filed the instant action encompassing agency case numbers

990793/1999-01566, 000170/1999-00017, 010053/2000-10596 and 020011. A.Compl. at ¶ 8.

21.     APHIS employees, such as Plaintiff, are not guaranteed recognition or awards.  Benham Dec

at ¶ 8.  Recognition programs vary depending on needs and budgets, and, accordingly, programs are

given "considerable latitude in developing award systems."  Id. at ¶ 7.


                            Respectfully submitted,



                            _____/s/_____
                            KENNETH L. WAINSTEIN, D.C. Bar # 451058
                            United States Attorney



                            _____/s/_____
                            RUDOLPH CONTRERAS, D.C. Bar # 434122
                            Assistant United States Attorney



                            _____/s/_____
                            OLIVER W. McDANIEL, D.C. Bar #377360
                            Assistant United States Attorney
                            Civil Division
                            555 4th Street, N.W.
                            Washington, D.C. 20530
                            (202) 616-0739

September 6, 2006


                                    5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this _6th_ day of September, 2006, I caused the foregoing Motion to Dismiss, for Summary Judgment and To Transfer, Memorandum of Points and Authorities in Support Thereof, Statement of Material Facts Not in Genuine Dispute, Proposed Order and Exhibits, to be served on Counsel for the Plaintiff by the Electronic Case Filing system or, if this means fails, then by mail, postage prepaid, addressed as follows:

Mark A. Dann, Esq.
Gebhardt & Associates, LLP
1101 17th Street, N.W.
Suite 807
Washington, D.C. 20036-4716.


        _____/s/_____
        OLIVER W. MCDANIEL, D.C. BAR # 377360
        Assistant United States Attorney
        Civil Division
        555 Fourth Street, N.W.
        Washington, D.C.  20530
        (202) 616-0739