## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENNY E. KRIESCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-02402 (RMC) |
| ) | |
| MICHAEL O. JOHANNS ) | |
| SECRETARY OF AGRICULTURE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS, FOR SUMMARY JUDGMENT, AND TO TRANSFER

Plaintiff Penny E. Kriesch, by and through undersigned counsel, hereby opposes Defendant's Motion to Dismiss, for Summary Judgment, and to Transfer (hereinafter "Motion"), and in support of her Opposition files the attached Memorandum of Law, setting forth Plaintiff's arguments and reasons why Defendant's Motion should be denied and this case should be allowed to proceed to discovery and trial.

Respectfully submitted,

_____/s/_____
JOSEPH D. GEBHARDT
    (D.C. Bar No. 113894)
MARK A. DANN
    (D.C. Bar No. 484523)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

October 10, 2006          Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PENNY E. KRIESCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 05-02402 (RMC) |
| | ) |
| MICHAEL O. JOHANNS | ) |
| SECRETARY OF AGRICULTURE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, FOR SUMMARY JUDGMENT, AND TO TRANSFER

### I. INTRODUCTION

Ms. Kriesch filed her Complaint and First Amended Complaint ("Complaint") seeking relief from Defendant's unlawful employment discrimination against her on the basis of her race (African American), and unlawful retaliation against her, both in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. Ms. Kriesch has been a dedicated federal employee for more than 26 years and has worked for the U.S. Department of the Agriculture ("USDA") Animal and Plant Health Service ("APHIS") for the last 16 years. Nevertheless, as set forth in her Complaint, Defendant discriminated and retaliated against Ms. Kriesch when it subjected her to adverse actions and a hostile working environment over a period of several years.

This case raises serious questions about Defendant's treatment of its African American employees, particularly those who, like Ms. Kriesch, challenge discrimination at APHIS. Contrary to Defendant's Motion, Ms. Kriesch timely initiated each of her administrative EEO complaints in response to Defendant's actions, and her Complaint was properly filed in this Court. Accordingly, Defendant's arguments in support of dismissal and transfer are misguided, Defendant's Motion should be denied, and this case should be allowed to proceed to discovery and trial.

## II. BACKGROUND[1]

As set forth in her Complaints, Ms. Kriesch alleges Defendant took several adverse actions against her and subjected her to a hostile working environment on the basis of her race and in retaliation for her protected activities. Specifically, Ms. Kriesch has identified at least eight discriminatory and/or retaliatory actions Defendant took against her between 1997 and 2001. See A. Complaint at ¶¶ 16, 24, 42, 55, 68, 81, 88, and 94.

Ms. Kriesh was discriminated and retaliated against when, between 1997 and 1999, her supervisors refused to issue her a performance appraisal. See A. Complaint at ¶ 16; see also Report of Investigation (Jan. 31, 2002) at 1 [Agency Case No. 990793 (Issue 2)], copy attached as Exhibit 1. By contrast, Ms. Kriesch's white coworkers were working under performance standards and, on information and belief, received merit pay awards during the same period. See A. Complaint at ¶ 22.

Ms. Kriesch was also discriminated and retaliated against when her supervisor relocated her

---

[1] In support of its Motion, Defendant has filed a Statement of Material Facts Not In Genuine Dispute that completely ignores the jurisdictional statement contained in Plaintiff's Complaint and selectively omits significant portions of relevant facts about the procedural history of Plaintiff's administrative claims. For example, Defendant Statement of Material Facts repeatedly states, incorrectly, that Plaintiff 's Complaint "does not indicate whether Plaintiff filed an EEOC complaint based on this allegation." See e.g., Def's Stmt. of Material Facts at ¶¶ 3,9. But see A. Complaint at ¶¶ 7-9 (incorporated herein by reference). It also incorrectly states the chronology of Plaintiff's actions; stating, for example, that Plaintiff filed Agency Case No. 990793, then suffered her non-selection for the Chief-of-Staff position, and "next filed an EEOC complaint on September 26, 1999 (Agency No. 000170)." See Def's Stmt. of Material Facts at ¶¶ 4-6. For these reasons, Plaintiff avers the following Background and EEO Complaints and Procedural History in lieu of a separate response to Defendant's Statement of Material Facts.

To the extent Plaintiff files exhibits in support of her Opposition, she does so only to further reinforce the jurisdictional statement already contained in her Complaint, which clearly stated that "she timely initiated and has fully exhausted" her administrative remedies and gave Defendant full notice all of the facts supporting this assertion by citing the relevant agency case numbers. See A. Complaint at ¶¶ 7-9. By reference, the Complaint incorporated at least nine volumes of administrative records already in Defendant's possession, and any additional exhibits attached hereto merely evidence her timely efforts to file her discrimination and retaliation claims. The Court may consider "document[s] integral to or explicitly relied upon in the complaint ... without converting the motion into one for summary judgment." See Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996). Similarly, it may properly take judicial notice of matters in prior cases. See Baker v. Henderson, 150 F. Supp.2d 17, 19 n.1 (D.D.C. 2001); Himmelman v. MCI Communications, 104 F.Supp.2d 1, 3 (D.D.C. 2000).

to an office in direct proximity to John Good (white) in February 1998, and refused to move her from that location despite her continued complaints about the move. See A. Complaint at ¶ 24; see also Ex.1 at 2 [[Agency Case No. 990793 (Issue 4)]. Mr. Good, who once called Ms. Kriesch a "kinky-headed, half-breed bitch," was her former supervisor, and was previously terminated by Defendant for sexually assaulting Ms. Kriesch and intimated that he intended to have sex with her then-12-year-old daughter. See A. Complaint at ¶ 24-25.

Ms. Kriesch was discriminated and retaliated against when, on or around March 16, 1999, she was not selected for the permanent position of Staff Assistant to the APHIS Administrator ("Chief of Staff"). See A. Complaint at ¶ 42; see also Ex. 1 at 1 [Agency Case No. 990793 (Issue 1)]. Instead, Defendant pre-selected a white, significantly less qualified GS-13 employee who had no prior EEO activity. See A. Complaint at ¶ 42. Ms. Kriesch was similarly discriminated and retaliated against when, on or around September 29, 1999, she was denied a promotion consistent with a desk audit that began on August 3, 1999, and concluded on about September 3, 1999. See A. Complaint at ¶ 55; see also Ex. 1 at 2-3 [Agency Case No. 000170 (Issues 1 and 2)]. The audit determined she was entitled to a position upgrade to GS-14 due to accretion of duties. See A. Complaint at ¶ 55.

Ms. Kriesch was later discriminated and retaliated against when, between October 11 and November 21, 1999, and beyond, she was assigned to Resource Management Support under the supervision of Mona A. Grupp (white), thereby lowering her position rank. See A. Complaint at ¶ 68; see also Ex. 1 at 2 [Agency Case No. 000170 (Issues 3 and 4)]. As part of this reassignment, many of Ms. Kriesch's "as-audited GS-14" duties and responsibilities were taken away and given to a white GS-14, she was issued a new Position Description and lower-level assignment to assure she would not be promoted, and her supervisors began treating her in a hostile and abusive manner. See A. Complaint at ¶ 68.

Ms. Kriesch was discriminated and retaliated against again when Defendant improperly processed her Work Place Violence Report, which she filed in March 2000. See A. Complaint at ¶

81; see also Ex. 1 at 2-3 [Agency Case No. 010053 (Issue 1)]. She was further discriminated and retaliated against when Defendant suspended her for three days between August 15 and 17, 2000. See A. Complaint at ¶ 88; see also Ex. 1 at 3 [Agency Case No. 010053 (Issue 2)]. Finally, Ms. Kriesch was retaliated against when, in July 2001, she was denied a promotion to the GS-14 Program Analyst position advertised in Merit Promotion Announcement 9-77-165-1. See A. Complaint at ¶ 94; see also Report of Investigation (Nov. 26, 2002) at 2 [Agency Case No. 020011 (Issue 1)], copy attached as Exhibit 2.

### III. EEO COMPLAINTS AND PROCEDURAL HISTORY

Ms. Kriesch timely initiated contact with Defendant's Office of Civil Rights ("EEO Office") regarding each of her claims of discrimination and retaliation. Following are summaries of Ms. Kriesch's initial EEO contacts in both chart and narrative form:

### Informal EEO Complaints

| Claim/Issue | Date of Incident or Reasonable Suspicion | Date of EEO Office Contact | Difference |
|---|---|---|---|
| Performance Appraisal | March 1999 | March 22, 1999 | 22 days |
| Relocation | February 24, 1998 | March 13, 1998 March 22, 1999 (renew) | 17 days |
| Non-Selection GS-14 Chief of Staff | March 15, 1999 | March 22, 1999 | 7 days |
| Non-Promotion to GS-14 As-Audited | September 29, 1999 | September 26, 1999 October 22, 1999 (renew) | -3 days 23 days |
| Reassignment | October 15, 1999 | October 22, 1999 | 7 days |
| Workplace Violence Report | August 14, 2000 | August 24, 2000 | 10 days |
| Three Day Suspension | August 15-17, 2000 | August 24, 2000 | 9 days |
| Non-Selection GS-14 Program Analyst | June 28, 2001 | July 19, 2001 | 21 days |

**A.    Agency Case No. 990793.**

On February 24, 1998, Ms. Kriesch learned her supervisor had relocated her to an office only four doors away from Mr. Good, so she sent him an email requesting to be moved immediately. See A. Complaint at ¶ 32.  On March 13, 1998, after her supervisor refused to move her, Ms. Kriesch went to APHIS's EEO Office and met with Barbara Patterson, an APHIS's EEO Office employee, to complain about her relocation. See Declaration of Penny E. Kriesch (Oct. 6, 2006) (March 1998 Calendar), copy attached as Exhibit 3, Attachment A.  During this meeting, Ms. Kriesch was informed she could not file a complaint regarding her relocation because her complaint was mis-construed as an attempt to continue an earlier EEO complaint she had filed in 1989. See e.g., Email from Anna P. Grayson to Penny E. Kriesch (June 28, 1999), copy attached as Exhibit 4. See also A. Complaint at ¶ 25.

Ms. Kriesch returned to APHIS's EEO Office again on March 19, 1998, to meet with Anna P. Grayson, Director of APHIS's EEO Office, and was informed for a second time that she could not file an EEO complaint. See Ex. 3, Attach. A (March 1998 Calendar).  However, Ms. Grayson did recommend that Ms. Kriesch contact Sheila Clemons, who worked with USDA's alternative dispute resolution program, and Ms. Kriesch and her supervisor later participated in an unsuccessful media-tion session.  Ms. Kriesch continued to complain about her relocation to other APHIS and USDA officials, but Ms. Kriesch was not moved away from Mr. Good by March 1999. See A. Complaint at ¶ 35-36.

Between 1997 and March 1999, Defendant had also not provided her with a performance appraisal. See A. Complaint at ¶ 16.  However, her supervisors did offer her pretextual explanations for their refusal to do so, and continually promised to "talk about" her performance standards. See A. Complaint at ¶¶ 18,19.  In March 1999, Ms. Kriesch learned her white colleagues were being issued merit pay awards because of their performance appraisals when she was asked to disseminate the SF-50s that memorialized their cash awards. See A. Complaint at ¶¶ 19, 22.  This was the first time Ms. Kriesch had a reason to suspect she was being treated differently from her white coworkers.

On or about March 15, 1999, Ms. Kriesch learned she had not been selected for the Chief of Staff position, and the Selection Certificate was signed March 16, 1999. See A. Complaint at ¶ 50. Instead, Defendant selected a white employee who had no prior EEO activity. See A. Complaint at ¶ 42.  Less than 45 days later, on March 22, 1999, Ms. Kriesch contacted APHIS's EEO Office and requested EEO counseling from an outside (non-APHIS) Counselor concerning her non-selection, as well as her relocation and the denial of performance appraisal, which were both continuing.[2] See A. Complaint at ¶ 8 ("Ms. Kriesch timely initiated contact with Defendant's Civil Rights Office re-garding her claims ... on March 22, 1999, and again on May 4, 1999") (emphasis added); see also Ex. 3 Attach. B (March 1999 Calendar).

APHIS's EEO Office referred Ms. Kriesch to EEO Counselor Calvin Jacob of the Agri-cultural Research Service (ARS), whom she called on March 23, 1999. See Ex. 3, Attach. B; see also Email from Penny E. Kriesch to Anna P. Grayson (May 3, 1999), copy attached as Exhibit 5.  Ms. Kriesch met with Mr. Jacob on March 30, 1999, and completed an EEO intake form. See Ex. 3, Attach. B.  However, Mr. Jacob refused to process Ms. Kriesch's complaint, disposed of the intake form, and referred her back to APHIS's EEO Office. See Ex. 5.  Ms. Kriesch contacted Myra Young at APHIS's EEO Office later that day, explained what had transpired, and she was informed that someone from that Office would get back to her regarding her complaint. See Ex. 3, Attach. C (March 30, 1999 Calendar).  This did not occur until Linda M. Smalls, a private contractor employed with DSZ, Inc., returned from a vacation and left a voicemail message for Ms. Kriesch on April 28, 1999. See Email from Penny E. Kriesch to Linda Small (April 30, 1999), copy attached as Exhibit 6.[3]  During the intervening period between March 30 and April 28, 1999, Ms. Kriesch contacted

---

[2] Requesting an outside Counselor was rational given the APHIS Administrator would be named as the offending official.

[3] Ms. Smalls did not indicate in her voicemail message that she was a private contractor, so when Ms. Kriesch attempted to communicate with her via email, she mistakenly contacted Linda Small, another APHIS employee. See Email from Penny E. Kriesch to Linda Small (May 5, 1999), copy attached as Exhibit 7. It was not clear whether USDA or APHIS assigned Ms. Smalls to be Ms. Kriesch's EEO Counselor.

USDA's EEO Office and filled out another EEO intake form concerning her discrimination claims. See Ex. 5; see also Complainant Intake Form, copy attached as Exhibit 8. This intake form memorialized each of Ms. Kriesch's claims: her relocation, "promotion/ non-selection," "evaluation/appraisal," "awards," "training," and "harassment." See Ex. 8. It also alleged race and reprisal as the basis for her Informal EEO Complaint. See Ex. 8.

Between April 28 and May 3, 1999, Ms. Kriesch inquired with Ms. Smalls and Ms. Grayson about proceeding with her claims, i.e., filing a formal EEO Complaint. See Ex. 6 ("I initially contacted agency officials in ... March and have actually provided 3 complaint intake contacts.... I choose to go formal with the case"); Ex. 5 ("I am proceeding formally"). However, she was told she could not do so, until a USDA EEO Counselor issued her a "notice of right to file." See Email from Anna P. Grayson to Penny E. Kriesch (May 4, 1999), copy attached as Exhibit 9. This series of communications, see Exs. 5-7, 9, which concluded on May 4, 1999, represented a continuation of Ms. Kriesch's efforts to file her first three claims.

Ms. Kriesch alleged that each of these first three claims (her non-selection, relocation, and the denial of performance appraisal) were based on race discrimination and reprisal. See EEO Counselor's Report (June 28, 1999) at 2, copy attached as Exhibit 10. They were all identified in Agency Case No. 990793, which was filed as a Formal EEO Complaint on July 2, 1999. See A. Complaint at ¶ 8; see also Ex. 1 at 1-2.

**B.    Agency Case No. 000170.**

Between August 20 and September 29, 1999, Ms. Kriesch learned she was being denied the as-audited promotion to GS-14; the later date was the date on which the SF-52 authorizing her position review was returned without action. See A. Complaint at ¶ 63 ("on or around September 29, 1999"(emphasis added)); see also id. at ¶ 57. Less than 45 days later, on September 26, 1999, Ms. Kriesch contacted APHIS's EEO Office and filed an Informal EEO Complaint about her non-promotion. See Counselor's Report (March 2, 2000) at 2, copy attached as Exhibit 11. Agency Case No. 990793 was still pending at this time.

7

After September 26, 1999, but before meeting with her EEO Counselor on December 7, 1999, regarding her non-promotion claim, Ms. Kriesch was informed of her reassignment to Resource Management Support under the supervision of Ms. Grupp. See A. Complaint at ¶ 68; see also Email from Charles P. Schwalbe to Penny E. Kriesch (Oct. 8. 1999), copy attached as Exhibit 12. Several of her job duties were also eliminated beginning on or around October 11, 1999. See A. Complaint at ¶ 68; see also Email from Mona A. Grupp to Catherine M. Metcalf (Feb. 7, 2000), copy attached as Exhibit 13. Thus, less than 45 days later, on October 22, 1999, Ms. Kriesch modified her September 26, 1999 Informal EEO Complaint to include these new claims. See Ex. 11 at 2. She also made clear that she was alleging a hostile work environment. See id. ("Ms. Kriesch's new allegations were that her work environment was hostile...").

All three of the actions underlying Ms. Kriesch's added claims (her non-promotion, subsequent reassignment, and loss of duties) occurred within 45 days of her October 22, 1999 contact with APHIS's EEO Office. Ms. Kriesch alleged these actions were based on her race and retaliation, see Ex. 11 at 2, and each of her new claims were identified in Agency Case No. 000170, which was filed as a Formal EEO Complaint on November 10, 1999. See A. Complaint at ¶ 8; see also Ex. 1 at 1-2. On December 4, 2000, Agency Case Nos. 990793 and 000170 were accepted for investigation and consolidated for processing. See Letter from Larry W. Newell to Kim D. Mann (Dec. 4, 2000), copy attached as Exhibit 14. APHIS did not raise any concerns about the timeliness of Ms. Kriesch's complaints at the crucial point it accepted them for investigation. See id.

## C.    Agency Case No. 010053.

Defendant suspended Ms. Kriesch for three days between August 15 and 17, 2000. See A. Complaint at ¶ 88. Less than 45 days later, on August 24, 2000, Ms. Kriesch contacted APHIS's EEO Office and filed an Informal EEO Complaint about her suspension. See Counselor's Report (Oct. 24, 2000) at 2, copy attached as Exhibit 15. At that time, APHIS was also refusing to properly process a Workplace Violence Report Ms. Kriesch filed against her supervisor, Ms. Grupp, in March 2000. See A. Complaint at ¶ 87. As late as June 22, 2000, George S. Robertson, APHIS's Work-

place Violence Coordinator, and Mary S. Neal, the person responsible for completing the threat assessment, were still claiming to be "plugging away" at Ms. Kriesch's Report. See Email from Penny E. Kriesch to Mary S. Neal (June 22, 2000), copy attached as Exhibit 16. However, they had still not reviewed the Federal Protective Service's report on Mr. Kriesch's allegations. See id. On about August 14, 2000, Ms. Kriesch began to realize Defendant had no intention of processing her Workplace Violence Report, and she sent an email asking for the Director of the Workplace Violence Program for assistance; her response to this email directed Ms. Kriesch to file a complaint with Defendant's EEO Office. See Email from Penny E. Kriesch to Karen Porciello (Aug. 14, 2000) and Reply (Aug. 29, 2000), copy attached as Exhibit 17. Thus, she included this claim in her August 24, 2000 Informal EEO Complaint because it was becoming clear that their delays constituted a continuation of her previously alleged hostile work environment. See Ex. 15 at 2.

Both of the actions underlying Ms. Kriesch's added claims (her suspension and the refusal to process her Workplace Violence Report) occurred within 45 days of her August 24, 2000 contact with APHIS's EEO Office. Ms. Kriesch alleged these additional actions were based on her race and reprisal. See Ex. 15 at 2. Her claims were identified in Agency Case No. 010053, which was filed as a Formal EEO Complaint on October 18, 2000. See A. Complaint at ¶ 8; see also Ex. 1 at 2-3. These claims were later accepted for investigation and consolidated with Agency Case Nos. 990793 and 000170 for processing on March 5, 2001. See Letter from Larry W. Newell to Penny E. Kriesch (March 5, 2000), copy attached as Exhibit 18. APHIS did not raise any concerns about the timeliness of Ms. Kriesch's complaints at the crucial time it accepted them for investigation. See id.

**D.    Agency Case No. 020011.**

On June 28, 2001, Defendant made its selection for the GS-14 Program Analyst position advertised in Merit Promotion Announcement 9-77-165-1, denying Ms. Kriesch the promotion. See A. Complaint at ¶ 94. Less than 45 days later, on July 19, 2001, Ms. Kriesch contacted APHIS's EEO Office and filed an Informal EEO Complaint about her non-promotion. See Counselor's Report (Oct. 5, 2001) at 2, copy attached as Exhibit 19. Ms. Kriesch alleged the non-promotion was

reprisal. <u>See</u> Ex. 19 at 2. Her claim was identified in Agency Case No. 020011, which was filed as a Formal EEO Complaint on October 2, 2001. <u>See</u> A. Complaint at ¶ 9. These claims were later accepted for investigation on May 30, 2002. <u>See</u> Letter from Larry W. Newell to Alex Talmadge (May 30, 2002), copy attached as Exhibit 20. APHIS did not raise any concerns about the timeliness of Ms. Kriesch's complaints at the crucial time it accepted them for investigation. <u>See</u> <u>id</u>.

**E.    Formal EEO Complaints and Subsequent Forums.**

As stated above, Ms. Kriesch timely filed Formal EEO Complaints regarding her claims on July 2, 1999, November 10, 1999, October 18, 2000, and October 2, 2001, respectively. <u>See</u> A. Complaint at ¶¶ 8, 9 (incorporated herein by reference). Each of her claims were then accepted for investigation by the Agency and later litigated before the Equal Employment Opportunity Commission (EEOC No. 100-A2-9729X) (EEOC No. 120-2003-00221X). Plaintiff filed her initial Complaint before this Court on December 14, 2005, more than 180 days after filing her formal EEO complaints. <u>See</u> 42 U.S.C. § 2000e-16(c).

## IV. <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>see</u> <u>also</u> <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276 (D.C. Cir. 1994). In deciding a motion to dismiss, a plaintiff's allegations must be accepted as true. <u>See</u> <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); <u>see</u> <u>also</u> <u>Scott v. England</u>, 264 F. Supp. 2d 5, 6 (D.D.C. 2002) (Court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor). "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the responsibility of pleading and proving it." <u>Williamson v. Shalala</u>, 992 F.Supp. 454, 437 (D.D.C. 1998) (citing <u>Brown v. Marsh</u>, 777 F.2d 8, 13 (D.C. Cir. 1985) (mere assertion of failure to exhaust remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

This Circuit has held that "because Title VII is remedial legislation dependent for its enforcement on laymen, [courts] must seek in every case an interpretation animated by the broad humanitarian and remedial purposes underlying the federal proscription of employment discrimination, and resort[ing] to technicalities to foreclose recourse to administrative or judicial processes is particularly inappropriate." See Thomas v. Mineta, 310 F.Supp.2d 198, 206 (D.D.C. 2004) (quoting Bethel v. Jefferson, 589 F.2d 631, 642 (D.C. Cir.1978). Moreover, to assess issues of timeliness, court should be mindful of the judiciary's crucial role in the statutory enforcement design because "[a]n overly technical approach [] impede[s] the goal of making []employment free from proscribed discrimination." Loe, 768 F.2d 417. Thus, "[t]his Court is required to examine untimely claims to determine whether there are any conditions that justify equitable tolling." See Childs v. Runyon, 1996 WL 1186995 (D.D.C. Jun 06, 1996) (citing Saltz v. Lehman, 672 F.2d 207, 208-09 (D.C.Cir.1982).

Federal Rule of Civil Procedure 12(b)(3) states that a court will dismiss or transfer a case if venue is improper or inconvenient in the plaintiff's chosen forum. When reviewing a motion for improper venue the Court must accept "the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." See Darby v. Dep't of Energy, 231 F.Supp.2d 274, 276 (D.D.C. 2002). To overcome the presumption in favor of the plaintiff, a defendant must present facts sufficient to defeat the plaintiff's venue assertions. See 2215 Fifth St. Assoc. v. U-Haul Int'l, 148 F.Supp.2d 50, 54 (D.D.C.2001). "Courts can determine venue by applying a 'commonsense appraisal' of events having operative significance." See Darby, 231 F.Supp.2d at 276 (citing Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir.1978)).

## V. ARGUMENT

**A.**   **Plaintiff's Claims Must Not Be Dismissed Because They Were Timely Filed and She Exhausted All Available Administrative Remedies.**

"[T]his Circuit employs a reasonable suspicion standard when determining whether to toll the limitations period." See Armmstrong v. Jackson, 2006 WL 2024975 (D.D.C. Jul 17, 2006).

Thus, in order for a Plaintiff's Title VII claims against a federal employer to be considered timely, she need only contact an EEO Counselor about her allegations within 45 days after gaining a reasonable suspicion of discrimination or retaliation. See 29 C.F.R. § 1614.105(a)(1). See also 29 C.F.R. § 1614.604(c); Bowden v. U.S., 106 F.3d 433, 437 (D.C. Cir. 1997) (the administrative time limit for bringing Title VII complaints to the attention of an agency EEO counselor is "subject to equitable tolling, estoppel, and waiver"); see e.g., Loe v. Heckler, 768 F.2d 409, 418-19 (D.C. Cir. 1985) (holding that the time limit for seeking EEO counseling should be tolled until the claimant "knows or has reason to know the facts that would support a charge of discrimination"). Ms. Kriesch fulfilled this obligation with respect to each of her eight claims.

### 1.    Not Issuing Plaintiff a Performance Appraisal.

Ms. Kriesch filed a timely EEO complaint against Defendant for not issuing her a performance appraisal. It was in March 1999 that Ms. Kriesch learned Defendant was giving her white colleagues merit pay awards based on their performance appraisals. See A. Complaint at ¶ 19. See also Scott, 264 F. Supp. 2d at 6 (Court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor). This occurred almost simultaneously as her non-selection for the Chief of Staff position. Thus, it was then that Ms. Kriesch became reasonably suspicious that she may have been subjected to discrimination and retaliation in a multitude of ways, including the denial of her performance appraisal, and that her supervisors' excuses for not issuing her a performance appraisal were pretextual. See e.g., Silver v. Leavitt, 2006 WL 626928 (D.D.C. Mar 13, 2006) ("Plaintiff had no way of knowing that the GS-9 interview policy even existed--nor could she know the date on which the policy was developed, or the date on which [others] were hired--unless and until defendant made such information public"). She then contacted APHIS's EEO Office to complain about her non-selection and the denial of her performance appraisal on March 22, 1999, within 45 days. See A. Complaint at ¶ 8. See also 29 C.F.R. § 1614.105(a)(1). She not only contacted APHIS's EEO Office about her claims, but she received a referral from that Office to an outside EEO Counselor assigned to ARS, met with that Counselor,

returned back to the APHIS's EEO Office, and filed an EEO Intake Form with the USDA EEO Office, all within the same 45-day time period. Defendant's attempt to now claim that Ms. Kriesch did not contact one of its EEO Offices until May 4, 1999, is not an accurate statement of the facts, nor a valid basis for dismissal of her claims. See 29 C.F.R. § 1614.105(a)(1) (an aggrieved person need only "initiate contact" with a Counselor within 45 days ).

### 2.    Relocating Plaintiff near Mr. Good.

Ms. Kriesch filed a timely EEO Complaint against Defendant for relocating her to an office in close proximity to Mr. Good. As initial matter, she had no reason to suspect the relocation was discriminatory until she learned that it resulted in her being assigned to an office only four doors away from Mr. Good (someone who once called her a racial epithet – a "kinky-headed, half-breed bitch"), which was on February 24, 1998. See A. Complaint at ¶ 32. She had no reason to suspect that the relocation was retaliatory until later, when she met with her supervisor who indicated he had considered her prior EEO interactions with Mr. Good when he decided to move her. See A. Complaint at ¶ 32. It was then that the 45-day period for her retaliation complaint began, and Ms. Kriesch did what was required of her in order to meet her complaint deadline.

First, she complained directly to her supervisor about her relocation in February 1998, immediately after discovering she was working so close to Mr. Good. See A. Complaint at ¶ 32. See also Lloyd v. Chao, 240 F. Supp. 2d 1, 3-4 (D.D.C. 2002) ("The purpose of the EEO counseling requirement is to give a federal agency an opportunity to informally resolve an employee's complaint by conducting internal investigations [and] an employee's contact with management officials is tantamount to initiating contact with an EEO counselor"). Second, she also renewed her complaint to that supervisor, as well as to higher level managers, after Mr. Good began harassing and intimidating her, thereby further exacerbating the situation. See A. Complaint at ¶ 35. Third, she contacted Defendant's EEO Office to complain about her relocation on two separate occasions – March 13 and 19, 1998 – within 45 days. The fact that Defendant's EEO Office made a mistake and refused to accept Ms. Kriesch's complaints is not just cause to a dismiss her claims. See e.g, Loe,

768 F.2d at 418 ("Agency assertion of a tardy counseling request as a dispositive response is particularly disturbing where ... the asserted delay is attributable to the agency's resisting an employee's diligent efforts to ferret out the facts"). See also Irwin v. Veterans Admin., 498 U.S. 89, 96 (1990) (permitting equitable tolling of the timeliness requirements "where the complaint has been induced or tricked by his adversary's misconduct"). Here, Ms. Kriesch's "assiduous effort" to seek an administrative remedy put Defendant on notice of her complaint. See Loe, 768 F.2d at 417.

Fourth, Ms. Kriesch complied with the advice of the Director of APHIS's EEO Office and engaged the Agency's alternative dispute resolution program. See Jarrell, 753 F.2d at 1092 ("The failure to [timely] contact an EEO Counselor ... may be excused if it is the result of justifiable reliance on the advice of another government officer"). Fifth, she continued to complain to her supervisors about the relocation because Defendant was continuing to refuse to move her despite the ongoing harassment she received from Mr. Good. Finally, she included this claim along with her claims for the non-selection and the denial of her performance appraisal that she timely filed in March 1999, when it became clear that Defendant could not refuse to accept her complaint. See Ex. 8. Put simply, Ms. Kriesch took every reasonable step to get Defendant to listen to her claims. This case does not involve a plaintiff who sat on her rights and failed to communicate her concerns to the Defendant, and its refusal to acknowledge her complaint, which subjected her to more than a year of continuous harassment, is not a grounds for the dismissal of her claim.

### 3. Not Selecting Plaintiff as the Chief of Staff.

Ms. Kriesch filed a timely EEO complaint against Defendant for not selecting her for the Chief of Staff position. She learned that Defendant chose not to select her for the Chief of Staff position on or about March 15, 1999. She then contacted APHIS's EEO Office to complain about her non-selection on March 22, 1999, within 45 days. See A. Complaint at ¶ 8. See also 29 C.F.R. § 1614.105(a)(1). At that time, she received a referral to an outside EEO Counselor assigned to

ARS,[4] and she then met with that Counselor, returned back to the APHIS's EEO Office, and filed an EEO Intake Form with the USDA EEO Office, all within the same 45-day time period. Thus, Defendant's claim that Ms. Kriesch did not contact one of its EEO Offices until May 4, 1999, is not an accurate statement of the facts, and should not result in a dismissal of her claims. See 29 C.F.R. § 1614.105(a)(1).

### 4. Denying Plaintiff her As-Audited Promotion.

Ms. Kriesch filed a timely EEO complaint against Defendant for not promoting her to GS-14 consistent with the desk audit and her accretion of duties. The audit began in August 1999, and Ms. Kriesch learned Defendant was denying her the promotion between August 20 and September 29, 1999. See A. Complaint at ¶ 63. She then contacted APHIS's EEO Office and complained about her non-promotion on September 26, 1999, within 45 days. See A. Complaint at ¶ 8. See also 29 C.F.R. § 1614.105(a)(1).

It is well settled that when a Plaintiff complains of a proposed personnel action that subsequently takes effect, the proposed action is considered to have merged into the final action and the Agency is required to process the complaint of discrimination. See e.g., Scott v. Postmaster General, EEOC Request No. 05960080 (June 7, 1996) ("where a complaint is filed on a proposed action and the agency subsequently proceeds with the proposed action, it should consider the action to have merged with the proposed action and process the complaint").[5] For this reason, Ms. Kriesch's non-promotion claim, which may have been filed three days before the non-promotion became official on September 29, 1999, automatically merged with the subsequent denial. Regardless, Ms. Kriesch revised and refined her Informal EEO Complaint October 22, 1999, within 45 days. See Ex. 11 at 2 ("on October 22, Ms. Kriesch filed an additional inquiry after learning that

---

[4] Federal sector employees are allowed to use outside EEO Counselors for the purpose of timeliness, particularly where the Counselor is assigned to a sister agency within the same Federal Department and the referral is made by an EEO Counselor who works for the employee's agency.

[5] See also Siegel v. Secretary of Veterans Affairs, EEOC Request No. 05960568 (October 9, 1997); Tomei v. Department of Defense, Appeal No. 019929938 (February 16, 2000).

her upgrade had been denied"). <u>See also</u> 29 C.F.R. § 1614.106(d) ("A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint").

### 5.    Reassigning Plaintiff to Resource Management Support.

Ms. Kriesch filed a timely EEO complaint against Defendant for assigning her to Resource Management Support, thereby lowering her position rank and eliminating many of her as-audited GS-14 duties and responsibilities.  On October 8, 1999, Ms. Kriesch's supervisor issued a memo-randum announcing her reassignment, effective October 15, 1999.  She then contacted APHIS's EEO Office and revised her prior Informal EEO Complaint concerning her non-promotion to include her reassignment on October 22, 1999, within 45 days. <u>See</u> Ex. 11 at 2. <u>See also</u> 29 C.F.R. § 1614.105(a)(1).

### 6.    Improperly Processing Plaintiff's Workplace Violence Report.

Ms. Kriesch filed a timely EEO complaint against Defendant for not properly processing her Workplace Violence Report.  While the first incident underlying Ms. Kriesch's Workplace Violence Report occurred in March 2000, the individuals responsible for processing the Report led Ms. Kriesch to believe they were still "plugging away" as late as June 22, 2000, and Ms. Kriesch began to realize Defendant had no intention of processing her complaint until about August 14, 2000. <u>See</u> Exs. 16,17.  She then contacted APHIS's EEO Office and filed her Informal EEO Complaint concerning this claim on August 24, 2000, within 45 days. <u>See</u> Ex. 15 at 2. <u>See also</u> 29 C.F.R. § 1614.105(a)(1).

### 7.    Suspending Plaintiff for Three Days.[6]

Ms. Kriesch filed a timely EEO complaint against Defendant for suspending her.  Defendant

---

[6] Defendant's Motion does not argue Ms. Kriesch's claim that her August 2000 suspension was discriminatory was untimely.  It should also be noted that "[s]everal courts have held that a plaintiff asserting a Title VII retaliation claim need not exhaust her administrative remedies prior to filing suit in federal court." <u>See</u> Smith v. O'Neill, 277 F.Supp.2d 12 (D.D.C. 2003) (citing <u>Lofton v. Atwood</u>, 1998 U.S. App. LEXIS 20698, at *2 (D.C. Cir. July 13, 1998); <u>Johnson v. Albright</u>, 992 F. Supp. 37, 39 (D.D.C. 1998).

suspended Ms. Kriesch for three days between August 15 and 17, 2000. She then contacted APHIS's EEO Office and filed her Informal EEO Complaint concerning this claim on August 24, 2000, within 45 days. See Ex. 15 at 2. See also 29 C.F.R. § 1614.105(a)(1) ("in the case of personnel action," contact with an EEO Counselor must be made "within 45 days of the effective date of the action").

### 8.    Not Selecting Plaintiff as the GS-14 Program Analyst.

Ms. Kriesch filed a timely EEO complaint against Defendant for not promoting her to the GS-14 Program Analyst. On June 28, 2001, Defendant made its selection for the position. See A. Complaint at ¶ 94. Ms. Kriesch and filed her Informal EEO Complaint concerning this claim on July 19, 2001, within 45 days. See Ex. 19 at 2. See also 29 C.F.R. § 1614.105(a)(1).

### B.    Plaintiff's Hostile Work Environment Claim Must Not Be Dismissed Because It Was Timely and Properly Pled.

### 1.    Plaintiff Timely Filed Her Hostile Work Environment Claim.

Ms. Kriesch filed a timely hostile work environment claim against Defendant. She explicitly identified a hostile work environment claim when she indicated on her March 1999 EEO Intake Form that she was being subjected to "harassment." See Ex. 8. In fact, the Intake Form, which was filed with USDA's EEO Office, stated clearly that one of her issues was: "Harassment/Non-sexual." See Ex. 8. ("Complainant was moved from Whitten Bldg to proximity of her attacker"). See also Ex. 11 at 2. She also made clear that she was alleging a hostile work environment during her subsequent complaints. See id. ("Ms. Kriesch's new allegations were that her work environment was hostile..."). Defendant's EEO Office expressly accepted Ms. Kriesch's hostile work environment claim for investigation on March 5, 2000. See Ex. 18. She also identified hostile work environment as a claim in this Complaint.[7] See A. Complaint at ¶¶ 8, 20, 68, 82.

---

[7] To the extent Plaintiff identified only two of Defendant's eight actions as being part of her hostile work environment claim in Count II of her Complaint (the two starkest acts of hostility), she did not intend to exclude the remaining factual allegations. Indeed, Plaintiff believes that discovery will show that most (if not all) of Defendant's actions contributed to a hostile work environment. Nor can she state for certain without discovery that she has properly identified all of the instances in which Defendant subjected her to disparate treatment; so Count I of her Complaint should not be read as excluding other potential disparities.

Moreover, Ms. Kriesch went beyond what was required of her when she identified her hostile work environment claim.  See Jones v. Billington, 12 F.Supp.2d 1, 7 (D.D.C.1997) (exhaustion requirement was satisfied even though hostile work environment was not included in formal EEO charge because it related to the conduct alleged in the charge), aff'd, 1998 WL 389101 (D.C. Cir. 1998).  Plaintiff contends that all of Defendant's actions, and in particular her relocation to an office near Mr. Good and Defendant's refusal to properly process her Workplace Violence Report, collectively rose to the level of a hostile work environment and should be actionable as such. See e.g., Bell v. Gonzales, 398 F.Supp.2d 78, 85 (D.D.C. 2005) (plaintiff has satisfied the exhaustion requirement for the hostile work environment claim where he timely complained about a lateral reassignment); see also Vickers v. Powell, 2005 WL 3207775 (D.D.C. Nov 21, 2005).  The EEOC Compliance Manual prohibits the dismissal of a person's claim simply because she "may not know the specific requirements of the anti-discrimination laws enforced by the EEOC" and "may make broad or ambiguous complaints of unfair treatment." See EEOC Compliance Manual, Sec. 8.  Moreover, a protected activity is something that can "reasonably have been interpreted as opposition to employment discrimination" and Ms. Kriesch's description of events meets this definition precisely. EEOC Compliance Manual, Sec. 8.[8]  Case law has similarly applied an expansive view toward protected opposition in retaliation cases, and construes such claims broadly to include virtually any open allegation of discriminatory behavior. See e.g. Beeck v. Fed. Express Corp., 81 F. Supp. 2d 48, 55 (D.C. Cir. 2000); see also Paquin v. Fed. Nat. Mortg. Ass'n, 119 F.3d 23, 32 (D.C. Cir. 1997).

Finally, Defendant's reliance on Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), and its progeny is misplaced.  Defendant cites Morgan to support the dismissal of Ms.

---

[8] In fact, the EEOC Compliance Manual provides an example that parallels Ms. Kriesch's facts: the complaining party tells her foreman about graffiti in her workplace that is derogatory toward women.  Although she does not specify that she believes the graffiti creates a hostile work environment based on sex, her complaint reasonably would have been interpreted by the foreman as opposition to sex discrimination, due to the sex-based content of the graffiti.  Thus, her complaint constitutes a protected activity under the opposition clause of Title VII.

Kriesch's hostile work environment claim. See Mot. at 14. But, Morgan's rejection of the "continuing violation" applies only to discrete acts of discrimination, not continuing hostile work environment claims of the type cited in Ms. Kriesch's Complaint.[9] See Morgan, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct"). According to Morgan: "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'... Provided that an act contributing to the claim occurs within the filing period, the entire period of the hostile environment may be considered by a court for the purposes of determining liability." Morgan, 536 U.S. at 117. Here, Ms. Kriesch contacted APHIS's EEO Office regarding each of her claims within the 45-day limitation period. See e.g., Bell, 398 F.Supp.2d at 85. (At a minimum, Ms. Kriesch timely filed her claim regarding her three-day suspension).

### 2.    Plaintiff's Complaint Alleges Facts Sufficient to Support her Hostile Work Environment Claim under the Notice Pleading Standard.

Defendant argues that Plaintiff's hostile work environment claim must be dismissed because it "fails substantively." See Mot. at 15. However, Plaintiff has alleged facts sufficient for a trier of fact to find Defendant operated a discriminatory and hostile workplace, and any arguments concerning the substance of her allegation are not proper in a motion to dismiss.

As the Supreme Court has explained, the notice pleading standard set forth in the Federal Rules of Civil Procedure "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Browning v. Clinton, 292 F.3d

---

[9] For many of Ms. Kriesch's claims it would be impossible to identify a date certain on which the discriminatory or retaliatory act occurred. For example, there is no way of knowing when Defendant chose not to properly process Ms. Kriesch's Workplace Violence Report. Similarly, Ms. Kriesch optimistically and in good faith pursued mediation with her supervisor in an effort to resolve her relocation near Mr. Good. Thus, there is no date certain on which Defendant chose to not to move Ms. Kriesch, and all the while, Mr. Good's harassment and intimidation continued. As stated in Ms. Kriesch's Complaint, "[h]e routinely stood outside her office for no apparent reason, banged a coffee pot against the window of her office door, and stood in the doorway of the men's lavatory when she passed by and gestured as if he were inviting her to enter." See A. Complaint at ¶ 33. These, while gross and uncalled for, are not discrete acts. Rather they are severe and pervasive acts that continued in an unremitting fashion until well after Ms. Kriesch filed her EEO complaint.

235, (D.C. Cir. 2002) (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002)). As a result, a Complaint need only set forth a short and plain statement of the plaintiff's claims, giving a defendant fair notice of the claim and the grounds upon which it rests. <u>Kingman Park Civic Ass'n v. Williams</u>, 348 F.3d 1033, 1040 (D.C. Cir. 2003). It is not necessary for a plaintiff to "plead law or match facts to every element of a legal theory," <u>Krieger v. Fadely</u>, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted). Under the Federal Rules' liberal standard, and at this early stage of litigation (prior to discovery), Plaintiff is simply not required to show all the ways in which Defendant established a hostile work environment, and Defendant is incorrect to argue otherwise.

Regardless, Ms. Kriesch went beyond what was required under the notice pleading standard, and she takes umbrage with Defendant's baseless claim that the actions she described were mere annoyance and ordinary workplace tribulations. <u>See</u> Mot. at 15; <u>see also</u> <u>id.</u> at 13 (claiming Plaintiff "mischaracterizes" her hostile work environment claim). Having been assigned to an office in close proximity to someone who sexually assaulted Ms. Kriesch, intimating that he intended to have sex with her then-12-year-old daughter, and called her a racial epithet ("kinky-headed, half-breed bitch") is not merely annoying. Being assigned to another supervisor who "acted in a hostile, abusive, and threatening manner that made Ms. Kriesch reasonably fearful that she might be assaulted" is hardly an ordinary workplace tribulation. The Complaint alleges that Ms. Grupp raised her voice at Ms. Kriesch, approached her in an aggressive manner, took items out of her hands, and hit a wall with her (Ms. Grupp's) fist. She also kicked Ms. Kriesch's door open, and yelled and screamed at her. This is the quintessential definition of a hostile work environment.

Defendant's contention, unworthy of the U.S. Government, in suggesting that using the word "spooky" in reference to an African American is merely characterizing someone by their race is completely unreasonable, indeed outrageous.[10] <u>See</u> Mot. at 16. Stereotypical references concerning

---

[10] If a white person in authority called Secretary of State Condoleeza Rice or Oprah Winfrey "spooky" or a "kinky-headed, half-breed bitch," would the comment be considered racist or merely annoying?

"Black workers," watermelons, and offal are not (or should not be) typical in the workplace. <u>See</u> <u>Ash v. Tyson Foods, Inc.</u>, 126 S.Ct. 1195, 1197 (2006) ("The speaker's meaning [by calling African American's 'boy'] may depend on various factors including context, inflection, tone of voice, local custom, and historical usage"). Furthermore, when a white male supervisor tells a female African American subordinate that he understands she could "be difficult for white men" he has established a hostile work environment.

**C.    Plaintiff's Claim Must Not Be Dismissed Because Defendant Misstates the Law Relative to Adverse Employment Actions.**

**1.    Plaintiff's Complaint Alleges Facts Sufficient to Support her Claims under the Notice Pleading Standard.**

Defendant argues that Plaintiff's claim regarding the withholding of her performance appraisal must be dismissed because she "failed to satisfy the second element of the prima facie case standard." <u>See</u> Mot. at 17. However, a plaintiff is not required to set forth all elements of her <u>prima facie</u> case in her Complaint. <u>See</u> <u>Swierkiewicz</u>, 534 U.S. at 511-14; see also <u>Sparrow v. United Air Lines</u>, 216 F.3d 1111, 1113 (D.C. Cir. 2000). This is because, as noted above, the Federal Rules of Civil Procedure "rel[y] on liberal discovery rules and summary judgment motions to define disputed facts and issues." <u>Browning</u>, 292 F.3d at 235. In fact, Defendant's Motion runs contrary to this ordering principal by attempting to prove its point by citing a witness declaration concerning facts, such as the discretionary nature of APHIS's cash awards and recognition program and the Agency's budgetary needs. <u>See</u> Mot. at 17. Indeed, Plaintiff believes she was on a merit pay system, and that Defendant's refusal to issue her a performance rating had a negative impact on her as a result (she will need discovery to verify such facts). These types of considerations are simply premature at this early stage of the litigation.[11]

---

[11] To the extent the Defendant is seeking Summary Judgment, Plaintiff opposes this Motion because there has been no discovery in this case. Generally, "pre-discovery summary judgment motions are premature and should only be used for exceptional circumstances." <u>Barry v. U.S. Capitol Guide Bd.</u>, 2005 WL 1026703, *4 (D.D.C. May 2, 2005); <u>see also</u> <u>Radich v. Goode</u>, 886 F.2d 1391, 1391 (3d Cir. 1989) ("court must give a party opposing summary judgment an adequate opportunity to obtain discovery"). Under Rule 56(c), summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

Defendant also argues that Plaintiff's claim regarding the "120-day detail to Chief of Staff" must be dismissed because the denial of an "acting" designation cannot be considered an adverse actions. See Mot. at 18. However, Ms. Kriesch does not, at this time, intend for the 120-day detail to stand as an independent claim. Rather, she claims she was discriminated and retaliated against when she was not selected for the Chief of Staff position advertised in Vacancy Announcement No. 9-32-102-9 – the permanent position. See A. Complaint at ¶ 42. She claims only that the 120-day detail was created for the white selectee "as an intermediary position until such time as she should could be officially promoted to Chief of Staff." See A. Complaint at ¶ 44. To the extent discovery may reveal more information concerning the 120-day detail, both the Plaintiff and Defendant must wait and see.

**2.  Defendant's Argument about Adverse Employment Actions Do Not Apply to Plaintiff's Retaliation Complaint.**

Defendant's argument concerning "adverse employment actions" ignores Ms. Kriesch's independent retaliation complaint and the law relative to retaliation. See e.g., Burlington Northern & Santa Fe Railway Company v. White, 126 S.Ct. 2405 (2006). However, even assuming arguendo that Ms. Kriesch has not alleged adverse employment actions, her Complaint does shows she suffered materially adverse consequences due to Defendant's retaliation, which are actionable in a retaliation complaint.

The D.C. Circuit has held that "Title VII makes unlawful any act of retaliation by an employer that well might dissuade a reasonable employee from making or supporting a charge of discrimination pursuant to Title VII." See Rochon v. Gonzales, No. 04-5278 (D.C. Cir. 2006) at 16.[12] This standard was expressly adopted by the Supreme Court in Burlington Northern, which rejected

---

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp, 477 U.S. at 318; Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995). See also Fed. R. Civ. P. 56(f).

[12] The Court suggested, for example, that the IRS could unlawfully retaliate against a complaining employee by subjecting her to a tax audit, which while not an "adverse employment action," would still be actionable. See Rochon at 13-14.

the notion that a plaintiff in a retaliation claim must show an "adverse employment action" in order to prevail.[13]  See 126 S.Ct. at 2405.  Here, Ms. Kriesch has identified eight actions taken by Defendant which, if proven, clearly had materially adverse consequences for her and would be sufficient to dissuade an employee from filing or supporting a charge of discrimination.  Soon after Ms. Kriesch was publicly identified as one of three women who had been previously involved in a discrimination complaint against Mr. Good, her supervisor informed her that she was being relocated, and this relocation placed her only four doors away from Mr. Good – the same person who displayed hateful prejudice in calling her a "kinky-headed, half-breed bitch."  See A. Complaint at ¶¶ 25,28,31.  Such treatment would certainly make a reasonable employee think twice before filing a discrimination complaint.

**E.     Plaintiff's Claims Have Been Brought in the Proper Venue.**

Defendant argues that three of Plaintiff's claims must be dismissed for want of proper venue. See Mot. at 19.  However, a Complaint like the one at issue, "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed." See Title 42 U.S.C. § 2000e-5(f)(3).  It may also be in "the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice." Id.

Ms. Kriesch's claim that she was discriminated and retaliated against when her "as-audited GS-14" duties and responsibilities were taken away and given to a white GS-14 is appropriate for litigation in the District of Columbia.  As an initial matter, Defendant misreads the Complaint as stating this allegation as a free-standing claim.  However, this portion of Ms. Kriesch's claim is inextricably conjoined to her claim that she was assigned to Resource Management Support. See A. Complaint at ¶ 68. See also Ex. 13 ("We received a request from Charles Schwalbe, Reassignment-Reclass, effective 11/21/99").  Moreover, the decision to reassign (the "Reassignment-Reclass") Ms.

---

[13] In Burlington Northern, the plaintiff claimed she was retaliated against when she was reassigned to perform standard track laborer tasks rather than operating a forklift.  The Court found she had been reassigned to a job that was less prestigious, less desirable, and more difficult, and that this reassignment was sufficiently harmful to deter a reasonable employee from complaining about discrimination.

Kriesch was made by Charles Schwalbe and her other supervisors in APHIS's D.C. Office, while Ms. Kriesch was still working in the District of Columbia.[14] See Exs. 12, 13.  Also, Defendant gave a significant portion of Ms. Kriesch's Communications Manager duties to Paula Henstridge (white), who was assigned to APHIS's D.C. Office. See A. Complaint at ¶ 64; see also  A. Complaint at ¶ 74 ("Ms. Kriesch's Communications Manager position was later abolished by Dr. Schwalbe"). Furthermore, Ms. Kriesch would have continued to work in the District of Columbia but for Defendant's discriminatory and retaliatory reassignment.  Thus, this claims satisfy two of the five possible venue option. See Title 42 U.S.C. § 2000e-5(f)(3).[15]

Ms. Kriesch's claim concerning Defendant's refusal to properly process her Workplace Violence Report is also appropriate for litigation in the District of Columbia.  Mr. Robertson, the APHIS's Workplace Violence Coordinator who was charged with processing Ms. Kriesch's Report worked in APHIS's D.C. Office, and he was assigned to do so by Richard L. Dunkle, Ph.D (white), PPQ Deputy Administrator, who also worked in the District of Columbia. See A. Complaint at ¶ 86; see also Exs. 16,17.  (The responsibility for processing her Report was moved to the District of Columbia because the person who attacked Ms. Kriesch, Mona A. Grupp, would have been responsible for processing her Report had it remained in Maryland.)

Ms. Kriesch's claim concerning Defendant's decision not to select her for the GS-14 Program Analyst position is also appropriate for litigation in the District of Columbia. See A. Complaint at ¶ 94.  This is particularly true under a 'commonsense appraisal' of the events underlying Ms. Kriesch's Complaint, it is clear that the District of Columbia is the appropriate venue. See Darby,

---

[14] Defendant cites Donnell v. Nat'l Guard Bureau, 568 F.Supp. 93, 94 (D.D.C. 1983), to support its argument that the District of Columbia is an inappropriate venue.  However, one of the facts the Donnell Court found particularly persuasive was that decisions concerning that plaintiff's responsibilities were made outside of the district.  In this case, a substantial portion of the employment practices challenged are decisions concerning Ms. Kriesch's position and duties that were made inside the District of Columbia.

[15] Plaintiff has reason to believe that "the employment records relevant to" her claims are also maintained and administered in the District of Columbia, which would make this the appropriate venue pursuant to Title 42 U.S.C. § 2000e-5(f)(3).

24

231 F.Supp.2d at 277.  A substantial number of the eight discriminatory actions Ms. Kriesch challenges in her Complaint took place exclusively in the District of Columbia.  See similarly, Heritage Educ. Trust v. Katz, 287 F.Supp.2d 34, 36 (D.D.C. 2003) (applying the "total activity" test). Indeed, all of the other claims preceded the events underlying Ms. Kriesch's non-selection to the GS-14 Program Analyst position, and had these discriminatory and retaliatory events not taken place, Ms. Kriesch would most likely never had applied for the position in the first place, and she would still have been located in the District of Columbia.  See James v. England, 332 F.Supp.2d 239 (D.D.C. 2004) (finding venue proper where the events relied on in support of dismissal occurred after the complained of events).  Under these circumstances, commonsense dictates that Defendant's Motion must be denied.  It would be unconscionable to require Ms. Kriesch to litigate two inextricably intertwined cases against the same Defendant in two separate jurisdictions.

**F.     Plaintiff's Claims Should Not Be Transferred.**

Defendant argues that three of Plaintiff's claims should be transferred for "the convenience of the parties and witnesses and in the interest of justice."  See Mot. at 22.  However, for the same reasons cited above, the District of Columbia, not Maryland, would be the more convenient venue.

## VI. CONCLUSION

For all the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's Motion and allow this case to proceed to discovery and trial.

Respectfully submitted,


_____/s/_____

JOSEPH D. GEBHARDT
   (D.C. Bar No. 113894)
MARK A. DANN
   (D.C. Bar No. 484523)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

October 10, 2006                          Attorneys for Plaintiff

25

**Exhibit List**

Exhibit 1      Report of Investigation (Jan. 31, 2002)

Exhibit 2      Report of Investigation (Nov. 26, 2002)

Exhibit 3      Declaration of Penny E. Kriesch (Oct. 10, 2006)
               Attachment A: March 1998 Calendar
               Attachment B: March 1999 Calendar
               Attachment C: Tuesday March 30, 1999 "Daily Record of Events"

Exhibit 4      Email from Anna P. Grayson to Penny E. Kriesch (June 28, 1999)

Exhibit 5      Email from Penny E. Kriesch to Anna P. Grayson (May 3, 1999)

Exhibit 6      Email from Penny E. Kriesch to Linda Small (April 30, 1999)

Exhibit 7      Email from Penny E. Kriesch to Linda Small (May 5, 1999)

Exhibit 8      Complainant Intake Form

Exhibit 9      Email from Anna P. Grayson to Penny E. Kriesch (May 4, 1999)

Exhibit 10     EEO Counselor's Report (June 28, 1999)

Exhibit 11     EEO Counselor's Report (March 2, 2000)

Exhibit 12     Email from Charles P. Schwalbe to Penny E. Kriesch (Oct. 8. 1999)

Exhibit 13     Email from Mona A. Grupp to Catherine M. Metcalf (Feb. 7, 2000)

Exhibit 14     Letter from Larry W. Newell to Kim D. Mann (Dec. 4, 2000)

Exhibit 15     EEO Counselor's Report (Oct. 24, 2000)

Exhibit 16     Email from Penny E. Kriesch to Mary S. Neal (June 22, 2000)

Exhibit 17     Email from Penny E. Kriesch to Karen Porciello (Aug. 14, 2000) and
               Reply (Aug. 29, 2000)

Exhibit 18     Letter from Larry W. Newell to Penny E. Kriesch (March 5, 2000)

Exhibit 19     EEO Counselor's Report (Oct. 5, 2001)

Exhibit 20     Letter from Larry W. Newell to Alex Talmadge (May 30, 2002)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss, for Summary Judgment, and to Transfer; Memorandum in Support of Plaintiff's Opposition; Exhibits 1-20; and proposed Order was served this 10th day of October, 2006, via facsimile (w/o exhibits) and electronic case filing through the Court, upon counsel for Defendant as follows:

        Oliver W. McDaniel, Esq.
        Assistant United States Attorney
        Judiciary Center Building, Tenth Floor
        555 Fourth Street, N.W.
        Washington, D.C. 20530
        Facsimile: 202-514-8780


                            /s/
                    MARK A. DANN