UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| PENNY E. KRIESCH, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No. 05-2402 (RMC) |
| MICHAEL O. JOHANNS, SECRETARY OF AGRICULTURE, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION & ORDER**

      Defendant Michael O. Johanns, Secretary of Agriculture, moves to dismiss or for summary judgment on those aspects of Plaintiff Penny E. Kriesch's employment discrimination complaint that are based on events in Washington, D.C., and to transfer the rest of the case to the District of Maryland, where some of the more recent events of which Ms. Kriesch complains took place. The Court will deny both motions.

**I. FACTUAL BACKGROUND**

      The entire detailed history need not be recounted to address the matters raised by Defendant's motions. The facts will be summarized only to the extent necessary to perform the appropriate analyses.

      Plaintiff, an African-American woman, has been employed by the United States Department of Agriculture ("USDA") for 17 years. First Am. Compl. ¶¶ 10-11. During that time she has raised numerous complaints regarding the conditions of her employment, which have led to formal EEOC investigations. *See generally* First Am. Compl. In this lawsuit, Plaintiff asserts three claims under Title VII, 42 U.S.C. §§ 2000e *et seq.* — one for adverse personnel actions, one for a

hostile work environment, and one for denial of a promotion. *See id.* ¶¶ 121-123. Those claims are based on seven alleged discriminatory and/or retaliatory courses of conduct: (1) Defendant's failure to provide Plaintiff with performance appraisals, which caused her not to be paid bonuses, *id.* ¶ 121(a); (2) Defendant's failure to promote Plaintiff to the Chief of Staff position, *id.* ¶ 121(b); (3) Defendant's refusal to grant Plaintiff a position upgrade consistent with the recommendation of a desk audit, *id.* ¶ 121(c); (4) the assignment of Plaintiff to a new position that was lower in rank and responsibility, *id.* ¶ 121(d); (5) Defendant's decision to relocate Plaintiff to an office in close proximity to a co-worker against whom Plaintiff had previously filed an assault charge, *id.* ¶ 122(a); (6) the improper processing of a Workplace Violence Report that Plaintiff lodged against her supervisor, *id.* ¶ 122(b); and (7) the failure to promote Plaintiff to the position of Program Analyst, *id.* ¶ 123.[1] According to the Amended Complaint, items (1) through (4) form the basis of the adverse personnel action claim, *id.* ¶ 121; items (5) through (6) form the basis for the hostile work environment claim, *id.* ¶ 122; and item (7) forms the basis for the failure to promote claim, *id.* ¶ 123.

## II. LEGAL STANDARDS

### A.   **Motion to Dismiss.**

In resolving a Rule 12(b)(6) motion, the Court must treat the complaint's factual allegations — including mixed questions of law and fact — as true and draw all reasonable

---

[1] Plaintiff's opposition brief identifies an additional act that allegedly forms the basis for her claims — Defendant's decision to suspend Plaintiff for three days in August 2000. Pl.'s Opp. to Def.'s Mot. to Dismiss, for Summ. J., and to Transfer ("Pl.'s Opp.") at 4. The Amended Complaint, however, does not explain how or if the suspension forms the basis for any of Plaintiff's causes of action. *See* First Am. Compl. ¶¶ 121-123. Because Plaintiff's alleged suspension does not affect the Court's decision regarding Defendant's motions, there is no need to address whether that factual allegation can or does support any of the causes of action alleged in the Amended Complaint.

inferences in the plaintiff's favor. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003). It is not necessary for the plaintiff to plead all elements of her prima facie case, see *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or to "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotations and citation omitted). The Court will not dismiss a complaint for failure to state a claim unless the defendant can show that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); *Gilven v. Fire*, 259 F.3d 749, 756 (D.C. Cir. 2001).

In deciding a 12(b)(6) motion, the Court may typically consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citation omitted). However, the Court may, in its discretion, consider matters outside the pleadings and thereby convert a Rule 12(b)(6) motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(b); *Yates v. Dist. of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003).

B. **Motion to Transfer.**

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice . . . , transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The "moving party bears the burden of establishing that the transfer is proper, and to do so it must first show that the plaintiff originally could have brought the action in the proposed transferee district." *Rauch v. Chertoff*, 451 F. Supp. 2d 147, 148 (D.D.C. 2006). "Motions to transfer are left to the discretion of the Court to adjudicate

on an 'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

### III. ANALYSIS

Defendant raises two primary arguments in support of his motion to dismiss and/or for summary judgment: first, that Plaintiff's Title VII claims are precluded for failure to exhaust administrative remedies; and second, that the facts alleged in the Amended Complaint are insufficient to support Plaintiff's claims based on hostile work environment and adverse personnel action.

A. **Exhaustion of Administrative Remedies**.

Defendant argues that Plaintiff's claims are subject to dismissal because she did not follow the administrative procedures for bringing a Title VII claim — specifically, that Plaintiff did not contact an EEOC Counselor within 45 days of the alleged discriminatory incidents. Def.'s Mem. of P. & A. In Supp. of Mot. to Dismiss, for Summ. J. and to Transfer ("Def.'s Mem.") at 10-14. According to Defendant, Plaintiff failed to satisfy this requirement with respect to all seven incidents that form the bases for her claims. Plaintiff responds that she did, in fact, timely consult with EEOC Counselors after these incidents; and even if she didn't, she took sufficient steps to do so and should therefore be allowed to pursue this action. Pl.'s Opp. at 11-17.

The Court need not address this factual disagreement because there is no dispute that USDA accepted for investigation, investigated fully, and decided on the merits all of Ms. Kriesch's EEO complaints and — at least based on what appears in the current record — never raised untimeliness during the administrative process. *See* Pl.'s Exs. 14, 18, & 20. Circuit precedent is clear that, under these circumstances, USDA may have waived its exhaustion defense. *Bowden v.*

*United States*, 106 F.3d 433 (D.C. Cir. 1997) ("if [an agency] not only accept[s] and investigate[s] a complaint, but also decide[s] it on the merits—all without mentioning timeliness—[its] failure to raise the issue in the administrative process may lead to waiver of the defense when the complainant files suit."); *see also Johnson v. Billington*, 404 F. Supp. 2d 157, 162 (D.D.C. 2005) ("when a complaint has proceeded through administrative channels prior to arriving at the federal courthouse, and the agency has accepted, investigated and decided that complaint on its merits without raising the exhaustion issue, the exhaustion defense may be found to have been waived."). Finding no legitimate reason why USDA failed to raise exhaustion during the administrative process, the Court concludes that USDA has waived that defense.

      **B.**      **Hostile Work Environment Claims.**

Plaintiff alleges two predicate acts as the foundation for her hostile work environment claim: relocating her to an office close to John Good, who had previously assaulted her and harassed her in other ways; and mishandling a Workplace Violence Report that Plaintiff filed after her supervisor, Mona Grupp, verbally assaulted her and physically intimidated her. First Am. Compl. ¶¶ 122(a) - 122(b). Defendant argues that these allegations are insufficient as a matter of law to create a hostile work environment. Def.'s Mem. at 15-17.

In order to prove a hostile work environment claim on the basis of race, "a plaintiff must demonstrate: (1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondeat superior liability." *Moore v. Ashcroft*, 401 F. Supp. 2d 1, 42 (D.D.C. 2005) (internal quotations and citations omitted). In assessing whether a plaintiff has

adequately alleged a hostile work environment, courts should to look at "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Although a plaintiff is "not required to plead a *prima facie* case of hostile work environment in the complaint, the alleged facts must be able to support such a claim."  *Moore*, 401 F. Supp. 2d at 42 (citing *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)).

Defendant essentially argues that the alleged acts of discrimination are not sufficiently severe or pervasive to meet the standard for a hostile work environment.  Plaintiff counters that under the liberal notice pleading standards of the Federal Rules of Civil Procedure she has sufficiently alleged a hostile work environment and, in any event, she "is simply not required to show all the ways in which Defendant established a hostile work environment . . . ." Pl.'s Opp. at 20.

Although Plaintiff's view of the notice pleading standards is perhaps a bit too liberal, the Court agrees that the allegations in the Amended Complaint are sufficient to state a claim for hostile-work-environment harassment under Title VII.  Plaintiff contends that in 1989 she filed an EEO complaint against Mr. Good "after he sexually assaulted her, spoke intimately about her daughter, and referred to [Plaintiff] as a 'kinky-headed, half-breed bitch.'"  First Am. Compl. ¶ 25.  Mr. Good was terminated in 1990, but was later rehired without Plaintiff's knowledge.  *Id.*  In February 1998 Plaintiff was transferred, over her objection, to a new office that was just a few doors away from Mr. Good, where she remained until October 1999 when she was relocated to the Riverdale, Maryland office.  *Id.* ¶¶ 31, 68.  During that time, Mr. Good allegedly subjected Plaintiff

to ongoing harassment, which prompted Plaintiff to make several complaints and unheeded requests to be relocated. *Id.* ¶¶ 33, 35. Plaintiff alleges that putting her in close proximity to Mr. Good was a calculated act of harassment by her superiors, who specifically intended to retaliate against Plaintiff for her past EEO activity. *See id.* ¶¶ 32, 35-41. The Court finds that these allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6).

Plaintiff also contends that she was subjected to a hostile work environment in 2000 after she was transferred to the Riverdale office. According to the Amended Complaint, Plaintiff's supervisor, Ms. Grupp, became enraged after Plaintiff refused to sign a Notice of Proposed Suspension and "acted in a hostile, abusive, and threatening manner that made Ms. Kriesch reasonably fearful that she might be assaulted." First Am. Compl. ¶ 82. Allegedly, Ms. Grupp also took "items out of [Plaintiff's] hands, and eventually hit[ ] the wall with her fist." *Id.* ¶ 83. Plaintiff reported the incident to the Federal Protective Service, but she alleges that the report was not properly investigated and no disciplinary action was taken against Ms. Grupp, which was contrary to Defendant's treatment of white employees and employees who had not made EEO complaints. *Id.* ¶¶ 86-87. The Amended Complaint also alleges, somewhat vaguely, that "[o]n another occasion" Ms. Grupp kicked Plaintiff's door open, screamed at Plaintiff, "and falsely accused her of serious wrongdoing." *Id.* ¶ 83.

Whether these allegations make out a hostile work environment claim is a closer question. Standing alone, it is debatable whether these incidents, which took place in a work location different from the one in which Plaintiff was forced to be near Mr. Good, would constitute the type of extreme and pervasive harassment that typifies a hostile work environment. *See Faragher*, 524 U.S. at 788 ("isolated incidents (unless extremely serious)" do not create a hostile

work environment). But looking at the totality of the circumstances and reading the Complaint in the light most favorable to Plaintiff, the Court cannot say, as a matter of law, that these allegations are insufficient to state a claim under Title VII. Taken as a whole, the Amended Complaint alleges that Plaintiff's supervisors carried out a campaign of discrimination, retaliation, and harassment over a period of years, and certain acts that were part of the campaign took the form of psychological abuse and physical intimidation. Assuming these allegations to be true, the Court finds the conduct to be sufficiently extreme and pervasive to make out a Title VII claim based on a hostile work environment. Accordingly, the Court declines to dismiss that claim under Rule 12(b)(6).

**C.   Adverse Personnel Actions**.

Defendant also argues that Plaintiff's adverse personnel action claim is subject to dismissal. Specifically, Defendant attacks two of the factual predicates that form the basis for that claim: the failure to award Plaintiff a 120-day detail to the Chief of Staff position, and the failure to pay Plaintiff bonuses in 1997, 1998, and 1999. Def.'s Mem. at 17-19.

*1.   Failure to Award 120-Day Detail to Chief of Staff Position.*

In early 1999, Ms. Kriesch applied for the position of Staff Assistant ("Chief of Staff") to the Administrator of the Animal and Plant Health Service ("APHS"), the division of USDA where she works. First Am. Compl. ¶¶ 42-43. She alleges that she was the victim of discrimination when, on March 16, 1999, she was not selected for that position. *Id.* Ms. Kriesch alleges that her application and interview were treated in a perfunctory manner and that the white co-worker who was selected received special treatment, including a 120-day trial period for the new position. *Id.* ¶¶ 43-44. Plaintiff contends that the failure to afford her the same opportunities and a similar trial period was discriminatory. *See id.* ¶¶ 44-47, 121(b).

Defendants argue that this claim cannot stand under Circuit precedent. The D.C. Circuit has held that the denial of an "acting" designation cannot be considered an adverse employment action because that "type of temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII." *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002). Thus, according to Defendant, the failure to award a temporary detail to Ms. Kriesch did not constitute an actionable adverse employment decision. Def.'s Mem. at 18-19.

Plaintiff responds that she does not "intend for the 120-day detail to stand as an independent claim." Pl.'s Opp. at 22. Rather, it is the failure to promote her to Chief of Staff that forms the basis for her claim; the 120-day detail is merely evidence of a special accommodation that was given to a white employee, which supports Plaintiff's theory that the employment decision was discriminatory. *Id.* Thus, Defendant's legal point that the failure to promote to a temporary designation is not actionable under Title VII, while correct, does not preclude Plaintiff's claim that she was discriminated against when Defendant failed to promote her to the permanent Chief of Staff position.

2.  *Failure to Provide Performance Evaluations and Pay Bonuses.*

Next, Defendant takes issue with Plaintiff's contention that she was not considered for or paid any cash awards because her supervisors failed to give her performance appraisals in 1997, 1998, and 1999. Def.'s Mem. at 17-18. According to Defendant, these awards are totally discretionary; there is nothing automatic about them. *See* Decl. of Karen Benham at ¶ 8. Because a discretionary bonus system leads only to a subjective expectation or hope that an employee might receive a bonus, it cannot as a matter of law give rise to an adverse employment action. *See Ball v. Tanoue*, 133 F. Supp. 2d 84, 91 n.6 (D.D.C. 2001) (citing *Russ v. Van Scoyoc Assocs., Inc.*, 122 F.

Supp. 2d 29, 33 (D.D.C. 2000)). Therefore, Defendant argues that the failure to pay a cash award cannot form the basis for a claim under Title VII. Def.'s Mem. at 17-18.

Obviously, Defendant's argument depends upon a factual assertion that is outside the Amended Complaint — *viz.*, that the cash awards to which Plaintiff felt she was entitled were purely discretionary. The Court would therefore have to treat Defendant's motion as one for summary judgment under Rule 56 in order to consider this argument. Moreover, even if the Court were to proceed under Rule 56 and grant this part of Defendant's motion, it would not dispose of Plaintiff's claim based on adverse personnel actions because there are at least three other factual allegations that support that claim. *See* First Am. Compl. ¶¶ 121(a), 121(c)-121(d). The Court declines to convert Defendant's motion into one for summary judgment at this early stage, before Plaintiff has been given the chance to conduct discovery, merely to adjudicate a single factual issue that would not be dispositive of any cause of action in the Amended Complaint. Defendant is free to raise this argument again in a dispositive motion after the close of discovery.

**D.     Change of Venue**.

Having sought dismissal of all of Ms. Kriesch's claims that pertain to her work in the District of Columbia, USDA asks the Court to transfer to the District of Maryland her claims based on incidents that occurred at the Riverdale, Maryland office where she now works. Def.'s Mem. at 19-24. Because the Court has not dismissed the D.C.-based claims, venue remains appropriate in this district.

In addition, Ms. Kriesch argues that venue is appropriate in D.C. for her claims arising from actions in Maryland because she would be working in Washington, D.C. but for the allegedly discriminatory reassignment/reclassification to the Riverdale office. Pl.'s Opp. at 23.

Also, she contends that USDA gave a significant portion of her prior duties as Communications Manager in D.C. to a white employee who was assigned to the APHS D.C. office. *Id.* at 24. Plaintiff argues that these claims satisfy two of Title VII's five possible venue tests. *See* 42 U.S.C. § 2000e-5(f)(3). The Court agrees and declines to transfer the case to district court in Maryland.

### IV.  CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Dismiss, for Summary Judgment and to Transfer [Dkt. # 11], is **DENIED**.

**SO ORDERED**.

/s/
ROSEMARY M. COLLYER
United States District Judge

DATE:  January 5, 2007